F I L E D
United States Court of Appeals
Tenth Circuit

AUG 3 2001

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellant,

v.

FRANCISCO ALVAREZ-PINEDA,

      Defendant-Appellee.

No. 99-2313

---

Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CR-99-294-01-JP)

---

John Grasty Crews II, Supervisory Assistant United States Attorney (Norman C. Bay, United States Attorney, Robert J. Gorence, Acting United States Attorney, Jason Bowles, Assistant United States Attorney and Terri Abernathy, Special Assistant United States Attorney, with him on the briefs), Las Cruces, New Mexico, for Plaintiff-Appellant.

Marcia J. Milner, Assistant Federal Public Defender (Stephen P. McCue, Federal Public Defender, Shari Lynn Allison, Research and Writing Specialist, with her on the brief), Las Cruces, New Mexico, for Defendant-Appellee.

---

Before **EBEL**, Circuit Judge, **BRORBY**, Senior Circuit Judge and **KELLY**, Circuit Judge.

---

**EBEL**, Circuit Judge.

When sentencing Defendant-Appellee Francisco Alvarez-Pineda ("Alvarez") for various drug charges related to his being a "backpacker,"[1] the district court departed downward under United States Sentencing Guideline §5K2.0 on the ground that Alvarez's conduct was "aberrant behavior."[2] The Government appeals the departure, arguing that the district court abused its discretion by departing without a sufficient basis in law or fact. We agree with the Government, and thus we REVERSE and REMAND for re-sentencing consistent with this opinion at such time as Alvarez's presence is secured.

## BACKGROUND

On January 15, 1999, drug smugglers recruited Francisco Alvarez-Pineda and eleven or twelve other Mexican citizens to carry marijuana in backpacks across the border from Mexico to the United States. After he was caught, Alvarez

---

[1]"Backpackers," as the term is colloquially used in the federal courts, are defendants indicted for carrying drugs, usually marijuana, in backpacks across the border from Mexico to the United States. See United States v. Soto-Holguin, 163 F.3d 1217, 1218 (10th Cir. 1999) ("[M]any drug smugglers hire poverty-stricken Mexican citizens to carry backpacks full of drugs across the United States-Mexico border on foot."), overruled on other grounds by United States v. Meyers, 200 F.3d 715, 721-22 (10th Cir. 2000). As the district court in this case makes clear, federal district courts near the border of Mexico encounter a large number of "backpacker" cases.

[2]As discussed below, Sentencing Guideline §5K2.20, dealing expressly with aberrant behavior, had not been added to the Guidelines when Alvarez was sentenced. Instead, the district court employed the catch-all Guideline §5K2.0 ("Grounds for Departure").

- 2 -

related that the smugglers offered to pay him between $400 and $700 for the trip. This is approximately four times Alvarez's monthly income of $120, which he earned as a construction worker in Mexico.

At about 1 p.m. on January 17, 1999, United States Border Patrol agents noticed two individuals walking near the Mexico-United States border in Hidalgo County, New Mexico. When the agents approached, the hikers attempted to hide in the brush. Assisted by a drug detection dog, the agents located the two individuals, one of whom was Alvarez, and discovered thirty-two bundles holding 443.49 kilograms of marijuana.

Both Alvarez and his co-defendant, Guillermo Nieblas-Nava, told the agents that they and about ten to twelve others had been carrying the thirty-two bundles of marijuana, but the others fled when they were spotted by the Border Patrol agents. These statements are corroborated by the fact that two people would not be physically capable of carrying 443.49 kilograms (about 978 pounds)[3] of marijuana.

The Government charged Alvarez and his co-defendant with four counts of possessing and importing more than one hundred kilograms of marijuana.[4]

_____

[3]Assuming there were twelve backpackers total, each of them would have been carrying approximately 37 kilograms, or 82 pounds, of marijuana. Presumably, they were also carrying other things, like water and food.

[4]Specifically, they were charged with: Count I, conspiracy to import more
(continued...)

Alvarez and his co-defendant offered to plead guilty, but Chief Judge John E. Conway of the District of New Mexico refused to accept their pleas on the ground that the Government was holding them responsible for the entire quantity of drugs found (443.49 kg) rather than merely the amount each man carried individually. The Government responded that it had offered Alvarez the maximum reductions available under the Sentencing Guidelines but that the Guidelines require that Alvarez be held responsible for the entire amount. See United States Sentencing Guidelines ("USSG") §1B1.3(a)(1) & cmt. n.2. Judge Conway replied, "[T]o stick these people with 975 pounds of marijuana is ridiculous. . . . Backpackers are simply different, and the sentencing-guideline people just don't understand backpackers."

After a two-day trial, Alvarez and his co-defendant were found guilty on all four counts. Judge Conway held a colloquy with the jurors after they returned their verdict, at which time he expressed his frustration at having to sentence backpackers under the Sentencing Guidelines, and he asked the jurors for their

---

[4](...continued)
than 100 kg of marijuana, in violation of 21 U.S.C. § 963; Count II, importation of more than 100 kg of marijuana, and aiding and abetting, in violation of 21 U.S.C. § 952(a), 21 U.S.C. § 960(a)(1), 21 U.S.C. § 960(b)(3), and 18 U.S.C. § 2; Count III, conspiracy to possess with intent to distribute more than 100 kg of marijuana, in violation of 21 U.S.C. § 846; and Count IV, possession with intent to distribute more than 100 kg of marijuana, and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(B), 18 U.S.C. § 2.

reactions. When asked about his discretion in sentencing, Judge Conway responded, "[T]he government always takes me up [on appeal], and I've been reversed every time when I depart downward on these fellows, and the last time the circuit reversed me, they did it in no uncertain terms and said, 'You follow the law or else.'" Later in the discussion, Judge Conway continued in the same vein, "I don't have any discretion. I've got to find unusual circumstances to depart either downward or upward, and they're pretty hard to come by. I mean, first time, that's taken into consideration. Remorseful, that's all taken into consideration . . . . I can tell you I'm going to go down as far as I can, because I just feel that way."

Subsequently, a federal probation officer prepared a Pre-Sentence Report which included the following facts and conclusions:

(1)     Alvarez had completed six years of formal education in Mexico;

(2)     from 1991 to 1995, he worked at a Japanese seatbelt factory in Mexico, and from 1995 until his arrest in January 1999, he worked as a construction laborer for various contractors in Mexico;

(3)     he had no prior criminal history, and thus his criminal history category was I;

(4)     USSG §1B1.3(a)(1) dictated that Alvarez was responsible for the entire quantity of 443.49 kg of marijuana (see also USSG §1B1.3, cmt. n.2 ("With respect to offenses involving contraband (including controlled substances), the defendant is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable

- 5 -

quantities of contraband that were within the scope of the criminal activity that he jointly undertook."));

(5)     according to the Drug Quantity Table, USSG §2D1.1(c)(6), Alvarez's base offense level was 28, because he was accountable for between 400 and 700 kg of marijuana;

(6)     Alvarez qualified for the two-level "safety-valve" reduction under USSG §2D1.1(b)(6) (cross-referencing §5C1.2);

(7)     he qualified for a four-level reduction as a minimal participant under USSG §3B1.2(a);

(8)     he qualified for a three-level reduction for acceptance of responsibility under USSG §3E1.1;

(9)     the statutory minimum of five years under 21 U.S.C. §841(b)(1)(B) did not apply because Alvarez met the criteria under 18 U.S.C. §3553(f)(1)-(5);

(10)    consequently, given Alvarez's criminal history category of I and his offense level of 19, the sentencing range was from 30 to 37 months;

(11)    Alvarez did not qualify for a downward departure under USSG §5K2.0 because "the probation officer finds that based on the information available, there does not exist . . . [a] mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines."

Judge Conway, however, instructed the probation officer to file an addendum to the PSR stating that the court "intends to consider a downward departure pursuant to Section 5K2.0 of the Sentencing Guidelines." The addendum noted "some of the factors which the Court may consider as a basis for downward departure: (1) This is a case of aberrant behavior as the defendant has

- 6 -

no prior history of transporting marijuana; (2) The defendant has no prior criminal record; (3) The defendant has a history of previously stable employment."

In response to Alvarez's formal motion for a downward departure, filed August 10, 1999, the probation officer concluded in a second Addendum that a downward departure for aberrant behavior and for the other factors asserted was not warranted because "[e]ach of the factors [asserted as a ground for departure] was considered by the sentencing commission in formulating the guidelines. . . . [T]his case does not rise to the level of [previous cases where downward departure was authorized]."

At Alvarez's sentencing hearing, Judge Conway again expressed his dissatisfaction with application of the Sentencing Guidelines in backpacker cases:

> There's nobody on the Sentencing Commission that's ever sentenced a backpacker; they don't know anything about it. . . . It's just an interesting phenomenon the way that these poor Mexican nationals are treated as against some of the others, so . . . so I'll let them take me up to the circuit again and see what happens. If the circuit reverses me on this, when you get back, you can make [other mitigation] arguments . . . if the newest way to handle these on aberrant behavior doesn't cut the mustard.

The court then found that Alvarez qualified for a downward departure for "a single act of aberrant behavior" under USSG §5K2.0. The court based its finding on a combination of four factors: (1) that Alvarez "has no prior history of transporting marijuana"; (2) that he "has no prior criminal history"; (3) that he has a limited education; and (4) that he "has held stable employment." Based on

these findings, the court reduced by six levels Alvarez's offense level (from 19 to 13), which yielded a sentencing range of 12 to 18 months. The court sentenced him to 12 months and one day on each count, all terms to run concurrently. By the date of his sentencing, September 14, 1999, Alvarez had already been in custody for 241 days, so he had only 125 days (about four months) left to serve.

The Government timely appealed the downward departure under 18 U.S.C. §3742(b)(2). While the appeal was pending, Alvarez completed his sentence and was deported to Mexico.

## DISCUSSION

### A. Jurisdiction

The district court had jurisdiction pursuant to 18 U.S.C. §3231. We have jurisdiction under 18 U.S.C. §3742(b)(2).

### B. Mootness

Despite the fact that Alvarez has completed his sentence and been deported, this appeal is not moot. "When the government is the party appealing the length of an imposed sentence as improperly short, the defendant's completion of that sentence does not moot the appeal because the government still alleges a remediable injury: the trial court's failure to impose the appropriate sentence

pursuant to statute or the sentencing guidelines." United States v. Meyers, 200 F.3d 715, 721 n.3 (10th Cir. 2000). Furthermore, if Alvarez returns to the United States, e.g., by extradition or by re-entering the United States on his own, he would be subject to arrest and imprisonment for the remainder of his sentence. See United States v. Dominguez-Carmona, 166 F.3d 1052, 1056 (10th Cir. 1999), overruled on other grounds by Meyers, 200 F.3d at 721. Thus, this case is not moot.

C. Whether USSG §5K2.20 Defining "Aberrant Behavior" Applies to Alvarez

Absent ex post facto concerns, "a sentencing court must apply the guidelines in effect at the time of sentencing." United States v. Sullivan, --- F.3d ---, 2001 WL 777000, at *2 (10th Cir. 2001) (citing USSG §1B1.11(a)). Since Alvarez was sentenced in September 1999, the 1998 Sentencing Guidelines apply. Amendment 603 to the Sentencing Guidelines, which for the first time added §5K2.20 authorizing departures for aberrant behavior, took effect November 1, 2000. See USSG §5K2.20; App. C, amend. 603. Thus, §5K2.20 was not available as a grounds for departure at the time Alvarez was sentenced.

Guideline §1B1.11(b)(2), however, provides, "[I]f a court applies an earlier edition of the Guidelines Manual, the court shall consider subsequent amendments, to the extent that such amendments are clarifying rather than

substantive changes." Therefore, we must decide whether amendment 603 is "substantive" or merely "clarifying."

While distinguishing between "substantive" and "clarifying" amendments is often difficult, we have looked to a variety of factors, "including the Commission's characterization of the amendment, whether the amendment changes the text of the guidelines or merely the accompanying commentary, and whether the amendment alters the controlling pre-amendment interpretation of the guideline at issue." United States v. Kissick, 69 F.3d 1048, 1052 (10th Cir. 1995).

Section 5K2.20 ("Aberrant Behavior (Policy Statement)") states,

> A sentence below the applicable guideline range may be warranted in an extraordinary case if the defendant's criminal conduct constituted aberrant behavior. However, the court may not depart below the guideline range on this basis if (1) the offense involved serious bodily injury or death; (2) the defendant discharged a firearm or otherwise used a firearm or a dangerous weapon; (3) the instant offense of conviction is a serious drug trafficking offense; (4) the defendant has more than one criminal history point, as determined under Chapter Four (Criminal History and Criminal Livelihood); or (5) the defendant has a prior federal, or state, felony conviction, regardless of whether the conviction is countable under Chapter Four.

USSG §5K2.20. The application notes to §5K2.20 further define, inter alia, "aberrant behavior" and "serious drug trafficking offense." The notes define "aberrant behavior" as "a single criminal occurrence or single criminal transaction that (A) was committed without significant planning; (B) was of limited duration; and (C) represents a marked deviation by the defendant from an otherwise

law-abiding life." USSG §5K2.20, cmt. n.1.  "Serious drug trafficking offense" is defined as "any controlled substance offense under title 21, United States Code, other than simple possession under 21 U.S.C. §844, that, because the defendant does not meet the criteria under §5C1.2 (Limitation on Applicability of Statutory Mandatory Minimum Sentences in Certain Cases), results in the imposition of a mandatory minimum term of imprisonment upon the defendant." Id.  Application note two explains, "In determining whether the court should depart on the basis of aberrant behavior, the court may consider the defendant's (A) mental and emotional conditions; (B) employment record; (C) record of prior good works; (D) motivation for committing the offense; and (E) efforts to mitigate the effects of the offense." Id. cmt. n.2.

The Sentencing Commission described the "Reason for Amendment [603]" as responding to a split in the circuit courts regarding the meaning of USSG §1A4(d)'s phrase "single act of aberrant behavior." See App. C, amend. 603.  The notes to amendment 603 continued, "This amendment addresses the circuit conflict but does not adopt in toto either the majority or minority circuit view on this issue." Id.  Furthermore, the Commission described the amendment as a "new policy statement and accompanying commentary in Chapter Five, Part K (Departures)." Id. (emphasis added).

Thus, while the Commission never formally designates amendment 603 as "substantive" or "clarifying," it is clear to us that the Commission viewed §5K2.20 as a "substantive" change. Section 5K2.20 adds an entirely new section to the Guidelines – new text and new commentary. It "alter[ed] the controlling pre-amendment interpretation" of "aberrant behavior" in all the federal Courts of Appeals, since it rejected in part both the majority and minority rules on the issue. Consequently, we conclude that §5K2.20 is "substantive" and, as such, off-limits for purposes of our review of Alvarez's case.

D. Appellate Review of a Downward Departure

"Congress allows district courts to depart from the applicable Guideline range if 'the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" Koon v. United States, 518 U.S. 81, 92 (1996) (quoting 18 U.S.C. §3553(b)); see also USSG §5K2.0 (reciting same standard). A combination of factors, none of which individually distinguish the case from a heartland situation, may occasionally justify a departure in an "extraordinary case," but "such cases will be extremely rare." USSG §5K2.0, cmt. Except in extraordinary cases, "a sentence outside the guidelines range is not

authorized. For example, dissatisfaction with the available sentencing range or a preference for a different sentence than that authorized by the guidelines is not an appropriate basis for a sentence outside the applicable guideline range." Id. (citation omitted). Finally, the district court must state in open court the specific reasons for departure. See 18 U.S.C. §3553(c)(2); United States v. Flinn, 987 F.2d 1497, 1501-02 (10th Cir. 1993).

We review departures from the Sentencing Guidelines for abuse of discretion. See United States v. Contreras, 180 F.3d 1204, 1208 (10th Cir. 1999). Our review is guided by a four-part inquiry:

> (1) whether the factual circumstances supporting a departure are permissible departure factors; (2) whether the departure factors relied upon by the district court remove the defendant from the applicable Guideline heartland thus warranting a departure; (3) whether the record sufficiently supports the factual basis underlying the departure; and (4) whether the degree of departure is reasonable. In performing this review, Koon tells us that an appellate court need not defer to the district court's resolution of the first question, whether a factor is a permissible departure factor under any circumstances, but must give substantial deference to the district court's resolution of the second question, whether a particular defendant is within the heartland given all the facts of the case.

United States v. Collins, 122 F.3d 1297, 1303 (10th Cir. 1997) (quotation marks and alterations omitted). "Impermissible factors include forbidden factors, discouraged factors that are not present to some exceptional degree, and encouraged factors already taken into account by the applicable guideline that are not present to some exceptional degree." Id. Forbidden factors include race, sex,

national origin, creed, religion, socioeconomic status, lack of guidance as a youth, drug or alcohol dependence, and economic hardship. See Koon, 518 U.S. at 93 (citing Sentencing Guidelines sections); United States v. Neal, 249 F.3d 1251, 1255 n.3 (10th Cir. 2001). Discouraged factors, located in subpart 5H1 of the Guidelines, "are those 'not ordinarily relevant to the determination of whether a sentence should be outside the applicable guideline range'" and "should be relied upon only in 'exceptional cases.'" Koon, 518 U.S. at 95 (quoting USSG ch.5, pt. H, intro. cmt.); Neal, 249 F.3d at 1255. Discouraged factors relevant to this case are educational skills, see §5H1.2, and employment record, see §5H1.5. See Neal, 249 F.3d at 1255 n.4. "'Encouraged' factors, listed in subpart 5K, are specific factors provided by the Commission 'to aid the court by identifying some of the factors that the Commission has not been able to take into account fully in formulating the guidelines.'" See id. at 1256 (quoting USSG §5K2.0); see also id. at 1257 & n.7. No encouraged factors are relevant to this appeal.

In addition, we recognize that the Guidelines include "unmentioned" and "analogous" factors. The Supreme Court in Koon stated that "[i]f a factor is unmentioned in the Guidelines, the court must, after considering the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole, decide whether it is sufficient to take the case out of the Guideline's heartland. The court must bear in mind the Commission's expectation that departures based

on grounds not mentioned in the Guidelines will be highly infrequent." Koon, 518 U.S. at 96 (citations and quotation marks omitted).

This court recently explained that the Guidelines also contain "analogous factors." See Neal, 249 F.3d at 1258. "These factors are . . . neither forbidden, discouraged, nor unmentioned in the Guidelines. Instead they are identifiable in policy statements, commentary, specific offense characteristics, base offense levels, and other areas of the Guidelines." Id. at 1257-58. In Neal, we held that "analogous factors are legally permissible bases for sentencing departures." Id. at 1258.

E. Application of Law to Fact

The district court departed downward under USSG §5K2.0 on the ground that Alvarez's "involvement in the offense is indicative of a single act of aberrant behavior." The court supported its downward departure on four grounds: (1) "no prior history of transporting marijuana," (2) no prior criminal history, (3) limited education, and (4) stable employment record. We find the court's use of these factors impermissible under the circumstances, and that neither considered separately nor considered cumulatively do they justify a downward departure in this case.

1. <u>No Prior History of Transporting Marijuana</u>

The district court's finding that Alvarez "has no prior history of transporting marijuana" could be argued to be either an "unmentioned" or an "analogous" factor.[5]  As to the former, we are unaware of a Guideline that specifically takes into account evidence that a defendant had <u>never</u> committed similar conduct, <u>i.e.</u>, that the unlucky defendant got caught violating the law the absolute first time he had in fact violated the law.  Perhaps the Commission recognized the obvious difficulty in this sort of factor, <u>viz.</u> how could a defendant prove this negative proposition and how could the government typically challenge such an assertion by the defendant.  Nevertheless, this assertion is a precursor to §5K2.20 (Aberrant Behavior) and there is some support in Tenth Circuit law considering such an argument prior to 1999. <u>See</u> <u>United States v. Pena</u>, 930 F.2d 1486, 1495 (10th Cir. 1991). <u>Cf.</u> <u>Koon</u>, 518 U.S. at 96 (explaining that departures based on unmentioned factors will be "highly infrequent").

Alternatively, perhaps it could be considered an "analogous" factor. Guideline §4A1.3 ("Adequacy of Criminal History Category") addresses the district court's concern: "This policy statement authorizes the consideration of a departure from the guidelines in the limited circumstances where reliable

---

[5]As we understand the district judge, he was here considering Alvarez's actual prior conduct rather than the lack of any criminal convictions.

information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's criminal history or likelihood of recidivism, and provides guidance for the consideration of such departures." USSG §4A1.3, cmt.

Alvarez stumbles on this factor, however it is characterized, because the Guideline expressly provides that "a departure below the lower limit of the guideline range for Criminal History Category I on the basis of the adequacy of criminal history cannot be appropriate." USSG §4A1.3 (emphasis added).  Earlier in the text of §4A1.3, the Guideline contemplates that criminal history might be overstated if there is "no other evidence of prior criminal behavior in the intervening period [between two convictions]."  Although this suggests that the absence of prior criminal conduct (as opposed to prior criminal convictions) may be considered to reduce a defendant's criminal history category, the language quoted above makes it clear that this factor could never be used to drop a defendant below criminal history category I.  That is, in effect, what the district court attempted to do here.[6]

Furthermore, here the record is devoid of any evidence that would establish that Alvarez had never before engaged in criminal conduct, much less that he had

_____

[6]Of course, after November 2000, the Guidelines were amended expressly to allow a departure for "Aberrant Behavior," so our comments here pertain only to the Guidelines as they existed before that amendment.

never before been engaged as a backpacker or otherwise been involved in the importation of illegal drugs in the United States. Either way, the sentencing court abused its discretion in relying on this factor.

2. No Prior Criminal History

We have decided previously that it is impermissible for a district court to use a defendant's lack of criminal history as a basis for downward departure. See United States v. Gallegos, 129 F.3d 1140, 1145 (10th Cir. 1997); see also United States v. Maldonado-Campos, 920 F.2d 714, 719 (10th Cir. 1990) ("In downward departures, the court ordinarily will look to the next-lower criminal history category for guidance, however, a departure below criminal history category I is not appropriate.") (citations omitted). In Gallegos, we relied on the express language of Guideline §4A1.3: "The lower limit of the range for Criminal History Category I is set for a first offender with the lowest risk of recidivism. Therefore, a departure below the lower limit of the guideline range for Criminal History Category I on the basis of the adequacy of the criminal history cannot be appropriate." See 129 F.3d at 1145. Thus, the district court erred as a matter of law in relying on lack of criminal history to depart downward in this case.

3-4. Limited Education and Stable Employment

The third ("limited education") and fourth ("stable employment") factors upon which the district court relied are discouraged factors. See USSG §§5H1.2

("Education and Vocational Skills"); 5H1.5 ("Employment Record"); see also Neal, 249 F.3d at 1255 n.4. Thus, they are permissible departure factors only in "extraordinary cases," i.e., when the court finds they are present "in some unusual or exceptional way." USSG §5K2.0, cmt. There is nothing unusual or exceptional about Alvarez having received six years of schooling[7] or having had stable (albeit, low-paying) employment in Mexico. Consequently, we conclude that the district court's use of these factors was also impermissible, and, hence, an abuse of discretion.

Not only does Alvarez fail to establish any single factor warranting a downward departure, when the entire record is considered he wholly fails to establish aberrant behavior, even accepting such a basis for departure prior to the November 1, 2000, addition of §5K2.20.

For Alvarez's conduct to have been properly found "aberrant," i.e., a short-lived, marked departure from an otherwise law-abiding life, see United States v. Colace, 126 F.3d 1229, 1231 (9th Cir. 1997), he would have had to introduce evidence, first and foremost, of his "otherwise law-abiding life." Any such evidence is totally lacking. There is no testimony about his good character or his

---

[7]Indeed, the district court demonstrated the contrary when he stated to the jury after it had rendered its verdict, "[W]hen I get [the defendants'] presentence report, they're going to have a second-grade education, maybe a third grade, but that's it."

history of good works in the community. There was no evidence that this episode of backpacking marijuana into the United States was a "short-lived, marked departure" from that life. There was no evidence that he had not previously engaged in illegal backpacking activity or other drug importation activity in the past.

Rather, the evidence clearly indicates that Judge Conway was "dissatisf[ied] with the available sentencing range" for backpackers and was using a downward departure for aberrant behavior as a means to impose what he believed was a fair sentence. As noted above, however, "dissatisfaction with the available sentencing range . . . is not an appropriate basis for a sentence outside the applicable guideline range." USSG §5K2.0, cmt. Therefore, we conclude that the downward departure was unjustified and the sentence cannot stand.

F. Re-sentencing

The Confrontation Clause of the Sixth Amendment requires that a defendant "be present in the courtroom at every stage of his trial." Illinois v. Allen, 397 U.S. 337, 338 (1970) (citing Lewis v. United States, 146 U.S. 370 (1892)). The Fourteenth Amendment makes this clause's guarantees binding upon the States. See Allen, 397 U.S. at 338 (citing Pointer v. Texas, 380 U.S. 400 (1965)).

The defendant's right to be present extends to the imposition of sentence. See Mayfield v. United States, 504 F.2d 888, 889 (10th Cir. 1974) (holding the defendant's presence was "required at the resentencing"); see also Fed. R. Crim. P. 43(a) ("The defendant shall be present at . . . the imposition of sentence, except as otherwise provided by this rule."); Fed. R. Crim. P. 32(c)(3)(C) ("Before imposing sentence, the court must address the defendant personally . . . ." );[8] 3A Charles Alan Wright, Federal Practice and Procedure: Criminal 2d: §722, at 16 (1982) ("If a sentence is set aside and the case remanded for resentencing, the new sentence is a part of the criminal proceeding and the presence of the defendant is necessary."). This court explained the importance of the defendant's right to be present at sentencing: "The imposition of punishment in a criminal case affects the most fundamental human rights: life and liberty. Sentencing should be conducted with the judge and defendant facing one another and not in secret. It is incumbent upon a sentencing judge to choose his words carefully so that the defendant is aware of his sentence when he leaves the courtroom." United States v. Villano, 816 F.2d 1448, 1452-53 (10th Cir. 1987) (en banc) (dicta) (holding that an unambiguous oral pronouncement of a sentence controlled

[8]A defendant in a non-capital case can waive this right, see Diaz v. United States, 223 U.S. 442, 455 (1912); Fed. R. Crim. P. 43(b), and a disruptive defendant can forfeit this right, see Allen, 397 U.S. at 346; Fed. R. Crim. P. 43(b)(3). Neither of these exceptions are relevant to this case, however.

despite a conflicting written sentence).  Accordingly, Alvarez may not be resentenced until he is properly brought before the appropriate court.

When (or if) Alvarez is re-sentenced, the sentencing court "is free to reconsider the sentencing package de novo," except as it is bound by the law of the case. See United States v. Smith, 116 F.3d 857, 859 (10th Cir. 1997) (holding that on remand "the district court is free to reconsider the sentencing package de novo unless the appellate court specifically limited the district court's discretion on remand"); see also United States v. Fortier, 242 F.3d 1224, 1232 (10th Cir. 2001) ("[A] district court may resentence a defendant on different grounds, considering different enhancements or departures, as long as they are not foreclosed by the scope of the appellate decision."); United States v. Talk, 158 F.3d 1064, 1069 (10th Cir.1998) (holding that in resentencing after remand, "[t]he district court was only bound by the law of the case . . ., not by its own previous refusal to depart")).  Thus, Alvarez and the Government may advance, and the court may consider, reasons not previously decided for increasing or decreasing his sentence.

## CONCLUSION

For the foregoing reasons, we REVERSE and REMAND for re-sentencing consistent with this opinion at such time as Alvarez's presence is secured.