**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 18 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MEL LAMBERT VELARDE,

Defendant-Appellant.

No. 02-2125
(D. New Mexico)
(D.C. No. CR-98-391-LH)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, Circuit Judge, **HOLLOWAY,** Senior Circuit Judge, and **LUNGSTRUM**, Chief District Judge[**].

Mel Lambert Velarde, a member of the Jicarilla Apache Indian Tribe, appeals from his conviction and sentence on retrial for aggravated sexual abuse of a child in violation of 18 U.S.C. §§ 2241(c) and 2246(2)(A), an offense committed within Indian country under 18 U.S.C. § 1153. He complains about

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] The Honorable John W. Lungstrum, Chief U.S. District Judge, District of Kansas, sitting by designation.

the district court's admission of Rule 414 evidence regarding prior child molestation, the court's comments on the evidence, and sentencing enhancements. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

**BACKGROUND**

In July 1997, Velarde entered into a romantic relationship with Angel Veneno, also a member of the Jicarilla Apache tribe. Velarde ran his family's ranch near Dulce, New Mexico, and Veneno lived in a mobile home in Dulce with her two sons, Jordan and Shane, and her daughter, "X."[1] X, then eight years old, was accustomed to sleeping in her mother's bedroom because she was afraid to sleep in her own room. On some weekends, Velarde stayed overnight at Veneno's home. He slept in the master bedroom with Veneno, and X slept in her brothers' room, an arrangement that upset X.

On February 1, 1998, Velarde spent the night at Veneno's mobile home. He testified that during the night he got up to use the bathroom because he had a "five alarm" upset stomach. He stated he got up, put his boots on, and left the master bedroom to use the "boys'" bathroom in the hallway instead of the bathroom in the master bedroom where he was sleeping.[2] He testified he was only

---

[1] The name of the victim in this case is disclosed in the briefs and record. Nevertheless, we refer to her as "X."

[2] Velarde testified that when he spent the night he would use the "boys'" bathroom because it "just didn't feel right" to use the "girls'" bathroom in the master bedroom.

gone from the bed for approximately four minutes, and while up, he simply used the bathroom, noticed the dome light in Veneno's car was on, and then returned to bed.[3] Velarde denied sexually assaulting, fondling, or even seeing X during his trip to the bathroom.

X's testimony was quite different. She stated she was sleeping next to her brother Jordan in the top bunk bed when she was awakened by Velarde lifting her out of the bed. She testified Velarde took her out into the hallway, held her mouth shut, pulled down her underpants, pulled down his pants, and then "tried to stick his private part into [her] private part." (R., Vol. V at 255.) She tried to scream for her mother, but to no avail because he was holding her mouth shut. She further stated that when he stopped he told her not to tell her mother.

Approximately one week later, X told her mother about the events of February 1. Veneno immediately called the police, and X conveyed to law enforcement what had happened. X was later examined at the regional hospital.

In June 1998, a federal grand jury returned an indictment against Velarde for one count of aggravated sexual abuse of a child. In March 1999, Velarde was convicted on this count. Judge John Edwards Conway presided over this trial and

---

[3] Veneno testified that she was awake when Velarde got up and when he returned. She stated that while he was up she heard the heater turn on, and did not hear anything like a struggle. But she testified that "you can't hear nothing when the heater is on."

sentenced Velarde to 135 months imprisonment. Velarde appealed his conviction, and we reversed and remanded for a new trial. *United States v. Velarde*, 214 F.3d 1204 (10th Cir. 2000). We determined the district court's admission of expert testimony, without an inquiry into the reliability of such testimony, was error and the error was not harmless. *Id*. at 1211-12. We also addressed the district court's admission of evidence regarding prior child molestation. We concluded: "[o]n retrial, should the government seek again to present [Rule 414] testimony, the court must, on the record, conduct the necessary Rule 403 balancing." *Id.* at 1212.

The case was reassigned to Judge C. LeRoy Hansen. On retrial, and in accord with our instructions, the district court conducted a Rule 403 balancing of the Rule 414 evidence. It admitted testimony of Velarde's niece, Trudy Harrison, and also allowed cross-examination of Harrison regarding a family property dispute in order to explore possible bias (Harrison's mother and her sons were on one side of the dispute and Velarde and his other sisters were on the other).

Harrison testified about two separate times she was molested by Velarde. They occurred when she was seven or eight years old, twenty years prior to the incident with X. The first incident occurred when she was at her grandmother's house, where Velarde also lived at the time. She said Velarde took her to his room to read comic books, placed his hand on her chest, pushed her down on the

bed, covered her mouth, unzipped her pants, and touched her vagina. She also testified that when one of her aunts walked by the room, he covered her with a blanket while holding her down. The second incident occurred behind a hill at her grandmother's house. She thought Velarde was going to show her some rabbits, but when they got behind the hill, he put a blanket on the ground, got on top of her, unzipped her pants, and again touched her vagina. Harrison said she heard a stick break, suggesting someone was close by, and Velarde threw a t-shirt over her face.

Harrison testified there were several reasons why she did not tell anyone about these events, including lack of family support. However, after learning of the allegations against Velarde, Harrison told her brothers she knew the allegations were true, and why. When she was contacted by the FBI in January 1999, she told them what happened.

During her testimony, Harrison was also questioned on both direct and cross examination regarding the family property dispute. She related that the family property dispute was extremely acrimonious and had caused a complete rift between the two sides. Velarde also testified to the acrimonious nature of the dispute. In fact, both parties extensively questioned witnesses about the land dispute. Eventually, the district judge voiced his displeasure with the extraordinary focus on a collateral issue. Velarde moved for a retrial based on the

judge's comment. The court denied the motion and instructed the jury with respect to the critical remarks.

In September 2001, the jury returned a guilty verdict, and in April 2002, Judge Hansen sentenced Velarde to 210 months imprisonment. In doing so, the judge imposed a two-level increase for obstruction of justice, USSG § 3C1.1 (2001), and a four-level increase for the use of force or threat in committing the offense, USSG § 2A3.1(b)(1) (2001). In the first sentencing, the use of force was not mentioned and no use of force enhancement was imposed.

Velarde argues: 1) the district court abused its discretion in admitting Harrison's testimony of prior acts of molestation; 2) the judge's comments regarding the familial property dispute deprived him of a fair trial, and in the same vein, the refusal of a new trial was an abuse of discretion; 3) the enhancement of his sentence for obstruction of justice (perjury) was clearly erroneous; and 4) the imposition of an enhancement after the second trial, which was not imposed after the first trial, was plain error in violation of the law of the case doctrine.

## ADMISSION OF PRIOR CHILD MOLESTATION TESTIMONY

Velarde argues the Rule 414 testimony from Harrison should not have been admitted because its probative value was substantially outweighed by unfair prejudice. He claims the alleged events were not sufficiently similar, the lapse of

time between the two events was too great, there was no frequency of acts, and there were no intervening acts. He maintains the evidence was admitted based upon the Government's need for it rather than its probative value.

"We review the admission of Rule 414 evidence for an abuse of discretion." *United States v. Mann*, 193 F.3d 1172, 1173 (10th Cir. 1999) (citing *United States v. Castillo,* 140 F.3d 874, 884 (10th Cir. 1998)), *cert. denied,* 529 U.S. 1011 (2000). We have stated:

> Under the abuse of discretion standard: a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances. When we apply the abuse of discretion standard, we defer to the trial court's judgment because of its first-hand ability to view the witness or evidence and assess credibility and probative value. An abuse of discretion occurs when the district court's decision is arbitrary, capricious or whimsical, or results in a manifestly unreasonable judgment.

*Moothart v. Bell*, 21 F.3d 1499, 1504-05 (10th Cir. 1994) (citations and quotations omitted). Federal Rule of Evidence 414(a) provides: "In a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant." Even so, the balancing requirements of Fed. R. Evid. 403 still apply. *Mann*, 193 F.3d at 1173; *Castillo*, 140 F.3d at 883-84. Under Rule 403, a court may exclude relevant evidence "if its probative value is substantially

outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Although courts cannot ignore the balancing requirement of Rule 403, they are to "'liberally' admit evidence of prior uncharged sex offenses." *Mann*, 193 F.3d at 1173 (quoting *United States v. Meacham*, 115 F.3d 1488, 1492 (10th Cir. 1997)).

The court must consider:

1) how clearly the prior act has been proved; 2) how probative the evidence is of the material fact it is admitted to prove; 3) how seriously disputed the material fact is; and 4) whether the government can avail itself of any less prejudicial evidence. When analyzing the probative dangers, a court considers: 1) how likely is it such evidence will contribute to an improperly-based jury verdict; 2) the extent to which such evidence will distract the jury from the central issues of the trial; and 3) how time consuming it will be to prove the prior conduct.

*United States v. Enjady*, 134 F.3d 1427, 1433 (10th Cir.) (quoting Mark A. Sheft, *Federal Rule of Evidence 413: A Dangerous New Frontier*, 33 Am. Crim. L. Rev. 57, 59 n.16 (1995)), *cert. denied*, 525 U.S. 887 (1998). No single factor is dispositive. *Mann*, 193 F.3d at 1174-75. The probative value given to such propensity evidence depends on "innumerable considerations" such as similarity of prior acts and charged acts, temporal proximity of the acts, frequency of the prior acts, presence or lack of intervening events, and the need for evidence beyond the testimony of the defendant and alleged victim. *United States v.*

-8-

*Guardia*, 135 F.3d 1326, 1331 (10th Cir. 1998) (discussing Rule 413).[4] When admitting evidence under Rule 414, the district court must make a "'reasoned, recorded' statement" of its balancing under Rule 403. *Castillo*, 140 F.3d at 884 (quoting *Guardia*, 135 F.3d at 1332).

The district court made such a statement. In essence, the court found: 1) Harrison's testimony was reasonably clear as to proof of the prior act—in fact, the court later relied on her testimony to impose a sentencing enhancement for obstruction of justice; 2) her testimony was probative of the material fact sought to be proved (her sexual abuse as a child by Velarde); 3) the Government could not avail itself of any less prejudicial evidence; and 4) it recognized how seriously the factual events were disputed. Further, it allowed cross examination of Harrison regarding her potential bias against Velarde. In doing so, the court recognized such cross examination on that collateral issue **had the potential to** create distractions and consume time, but in the weighing process, concluded that the need to explore bias (test credibility) outweighed the countervailing factors.

The district court did not abuse its discretion, rather it properly applied *Enjady*, through *McHorse*, 179 F.3d at 899, in the balancing process. Its decision to admit Harrison's testimony was not "arbitrary, capricious or whimsical," nor

---

[4] Rule 413(a) is identical to Rule 414(a) except that it applies to the offense of sexual assault. *United States v. McHorse*, 179 F.3d 889, 897 (10th Cir.), *cert. denied*, 528 U.S. 944 (1999).

did it exceed "the bounds of permissible choice in the circumstances" or result "in a manifestly unreasonable judgment." *Moothart,* 21 F.3d at 1504-05 (quotation marks and citation omitted).

## COMMENT ON EVIDENCE–DENIAL OF MOTION FOR MISTRIAL

As stated above, the district judge allowed extensive questioning of Harrison, Velarde, and others about the family land dispute. Harrison and Velarde testified extensively about the very contentious nature of the dispute and the extremely acrimonious situation it created. In fact, the testimony regarding this issue was so extensive that the judge, on a number of occasions and outside the presence of the jury, voiced concern that it was consuming too much time and effort relative to its importance.[5]

During cross examination, Velarde was questioned on the current legal status of the family land dispute. Counsel for Velarde objected, claiming the

---

[5] At a bench conference during the cross examination of Harrison, the judge stated "I think it's gone far enough. I've heard enough. The jury has heard enough. If they don't know there was an acrimonious family situation, they're never going to know." (R., Vol. V at 359.) At another bench conference, counsel for Velarde was attempting to proffer additional evidence of the acrimonious family situation, and the court responded that this issue had been drug out "far more than it needed to be drug out," and that it was totally irrelevant because bias had been proved, "no question about it." (*Id.* at 369.) The judge continued to voice his concerns when, prior to allowing Velarde to be questioned on this matter, he stated the questioning would be limited "because we're not going to try the land dispute case in this court." (R., Vol. VI at 499.) At a bench conference during questioning of Velarde he said, "I've had enough testimony about the land . . . let's get away from the land." (*Id.* at 544.)

issue was misleading based on the confused status of the dispute.  Clearly frustrated with the excessive time and effort given to this issue, the judge stated (to counsel):  "You're testifying, and you're not a witness.  The jury is to disregard [counsel's] remarks.  I don't know any of those things, and I will not let the jury know those things.  **This is no longer an issue in this case.  Let's proceed**."  (R., Vol. VI at 547.)  (Emphasis added.)  Shortly thereafter, Velarde's counsel moved for a mistrial, claiming this comment negated the defense theory that Harrison's testimony was not truthful because of her bias.  The court denied the motion and instructed the jury as follows:

> Members of the jury, counsel is concerned that when I said it was no longer an issue in the case that you might misapprehend my meaning.  What the Court really intended is that it's no longer necessary for us to talk about real estate in this case.
> Those issues, however, about the bias or lack of bias or validity of bias arising out of the real estate or land dispute are issues that are the same as they have always been in this case.
> I have been concerned that that was consuming too much of the time in this case and was distracting both counsel and the jury from the real issues in the case, because it is collateral to the main issues, but it is an issue that is clearly important on the testimony, evaluating the testimony of the witnesses in the case.

(R., Vol. VI at 552-53.)  Counsel renewed the motion, claiming the court's admonition only made matters worse.  The court denied this renewed motion as well.

Velarde's claims on appeal echo those made at trial—the judge's comment was prejudicial and the curative instruction made it worse.  He takes particular

-11-

umbrage with the words "it [is] no longer necessary to talk about '*real estate*' and that the evidence of bias distracted from the '*real issues*,'" and claims prejudice as a result. *(*Appellant's Br. at 28.) (Emphasis in original.)

A district court's denial of a motion for a mistrial is reviewed for an abuse of discretion. *United States v. Wolny*, 133 F.3d 758, 762 (10th Cir. 1998). "An abuse of discretion occurs when the district court's decision is arbitrary, capricious or whimsical, or results in a manifestly unreasonable judgment." *Moothart*, 21 F.3d at 1504-05 (quotation marks and citation omitted).

Because the remarks of the trial judge might influence the jury, restrictions are placed upon statements the judge might make about evidence and arguments (in the jury's presence). *United States v. Chanthadara*, 230 F.3d 1237, 1249 (10th Cir. 2000), *cert. denied,* 534 U.S. 992 (2001). While federal judges may comment on evidence, they should not become advocates. *Id.* Furthermore:

> If a judge does express an opinion about the facts, he or she must explain to the jurors that it is their responsibility to arrive at an independent determination of those facts and that they owe absolutely no deference to the judge's assessment. The point should never be reached where it appears to the jury that the judge believes the accused is guilty.
>
> This circuit has applied these principles to conclude that a trial judge's statements deprived the defendant of a fair trial. In *Davis v. United States*, 227 F.2d 568 (10th Cir. 1955), the judge gave the jury [an instruction that indicated the judge was of the opinion that he believed beyond a reasonable doubt that the defendant was guilty]. Noting that the judge's power to comment on the evidence should be exercised cautiously and only in exceptional cases and that the

crucial facts were disputed, we held that the defendant was entitled to a new trial. We reached a similar conclusion in *McBride v. United States*, 314 F.2d 75, 76 (10th Cir. 1963). There, the judge concluded his instructions to the jury with an assessment of the evidence [which we determined was an assessment of guilt].

*Id.* at 1249-50 (quotation marks and citations omitted).

Considering the time and effort dedicated to the land issue, any reasonable jury would understand, and this jury was most definitely aware, that the truly acrimonious family dispute should have been considered when assessing witness credibility, particularly that of Harrison. Taken in context, the comment related to *evaluating* credibility, not Velarde's guilt or Harrison's credibility, *per se.* The jury heard the land testimony *ad nauseam* and the judge quite properly instructed the jury to keep that evidence in perspective.

## SENTENCING ENHANCEMENT–OBSTRUCTION OF JUSTICE (USSG § 3C1.1)

The district court imposed a two-level sentencing enhancement for obstruction of justice (perjury) under USSG § 3C1.1. It based the increase upon its finding that Velarde intentionally provided false testimony, in that

he denied seeing the victim at any time during his visit to the bathroom on the night of the incident, he denied pulling the victim out of bed, he denied fondling the victim, and he denied sexually assaulting the victim. In addition to that, he denied ever touching Trudy Harrison.

(R., Vol. XVII at 66-67.)

Velarde challenges this enhancement on appeal, not based upon the sufficiency of the court's findings, but on the sufficiency of the evidence itself. He maintains his testimony was not inherently unbelievable and a reasonable

-13-

person could find his testimony true because the evidence was "barely sufficient to support the jury's verdict." (Appellant's Br. at 31.)

"We review the district court's factual findings as to the obstruction of justice under the clearly erroneous standard, and review *de novo* the district court's legal interpretation of the Sentencing Guidelines." *United States v. Hawthorne*, 316 F.3d 1140, 1145 (10th Cir.) (quotation marks and citation omitted), *cert. denied,* 124 S. Ct. 209 (2003). A factual finding "is clearly erroneous if it is without factual support in the record or if the appellate court, after reviewing all the evidence, is left with a definite and firm conviction that a mistake has been made." *Manning v. United States*, 146 F.3d 808, 812 (10th Cir. 1998) (quotation marks and citations omitted).

Section 3C1.1 of the Sentencing Guidelines provides:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

USSG § 3C1.1. Commentary to § 3C1.1 provides "a non-exhaustive list of examples of the types of conduct to which this adjustment applies," including "committing, suborning, or attempting to suborn perjury." USSG § 3C1.1, comment. (n.4(b)). Perjury, in the context of § 3C1.1, occurs when "a witness testifying under oath or affirmation . . . gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a

result of confusion, mistake, or faulty memory." *Hawthorne*, 316 F.3d at 1145

(quoting *United States v. Dunnigan*, 507 U.S. 87, 94 (1993) (citing the definition

of perjury set forth in the federal perjury statute, 18 U.S.C. § 1621)).  It is well

established that a criminal defendant has a right to testify, but that right does not

include the right to commit perjury.  *LaChance v. Erickson*, 522 U.S. 262, 266

(1998).  However, not every defendant who testifies and is then convicted will

receive the § 3C1.1 enhancement.  *Hawthorne*, 316 F.3d at 1145 (citing

*Dunnigan*, 507 U.S. at 95).  For example, when a defendant testifies about

"'matters such as lack of capacity, insanity, duress, or self-defense [his] testimony

may be truthful, but the jury may nonetheless find the testimony insufficient to

excuse criminal liability or prove lack of intent.'"  *Id.* (quoting *Dunnigan*, 507

U.S. at 95).  When imposing a contested enhancement based upon perjury of trial

testimony, the "'court must review the evidence and make independent findings

necessary to establish a willful impediment to or obstruction of justice, or an

attempt to do the same, under the perjury definition we have set out.'"  *Id.*

(quoting *Dunnigan*, 507 U.S. at 95).

The district court expressly complied with our instruction to be "explicit

about which representations by the defendant constitute perjury."  *Id.* at 1146.

So, rather than attack the sufficiency of the court's findings and while

begrudgingly admitting the evidence was sufficient to convict him (of sexual

-15-

abuse), Velarde nevertheless claims the evidence of perjury was insufficient. (Appellant's Br. at 31.) But if the evidence is sufficient to find sexual assault beyond a reasonable doubt, it provides a solid baseline against which the trial judge, who also heard the evidence and was in a position to assess the veracity and credibility of all witnesses, could take the measure of Velarde's testimony. It is not unreasonable to conclude Velarde lied under oath about material facts when his testimony is compared to all of the other evidence.

We recognize that "[a]n automatic finding of untruthfulness, based on the verdict alone, would impinge upon the constitutional right to testify on one's own behalf." *United States v. Markum*, 4 F.3d 891, 897 (10th Cir. 1993) (citation omitted). We are satisfied that did not occur here. The district court did not blindly impose the enhancement based upon the verdict. Rather, it explicitly provided the statements it believed Velarde intentionally testified to falsely, and the evidence it relied upon in making that assessment. The district court did not err.

**SENTENCING ENHANCEMENT ON RETRIAL FOR USE OF FORCE**

After his original conviction, Velarde was sentenced to 135 months by Judge Conway. No enhancement for the use of force was given or even suggested. Upon conviction after retrial, Velarde was sentenced to 210 months by Judge Hansen. The increase was based upon the four-level enhancement required

-16-

for the use of force in the commission of the crime. USSG § 2A3.1(b)(1).[6]

Velarde objected to this enhancement, claiming it was impermissible double counting, and it amounted to vindictiveness for successfully exercising his right to appeal. On appeal, Velarde does not mention the double counting argument and essentially concedes his vindictiveness argument must fail because sentences were imposed by two different judges. However, for the first time, Velarde argues the four-level enhancement for the use of force violates the law of the case doctrine because it was not imposed in his first sentence. He maintains nothing changed since his original sentence that would justify the enhancement—both the evidence at trial and controlling authority are the same.

"[I]f a party fails to lodge a specific objection with the district court to its interpretation or application of the sentencing guidelines, such a failure precludes appellate review. Nevertheless, we recognize a narrow exception and review a

---

[6]USSG § 2A3.1(b)(1) states: "If the offense was committed by the means set forth in 18 U.S.C. § 2241(a) or (b), increase by 4 levels." 18 U.S.C. § 2241(a) states in pertinent part:

(a) By force or threat—Whoever . . . knowingly causes another person to engage in a sexual act–

(1) by using force against that other person; or
(2) by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping,

or attempts to do so, shall be fined under this title, imprisoned for any term of years or life, or both.

legal question involving application of the sentencing guidelines for plain error." *United States v. Tisdale*, 248 F.3d 964, 975 (10th Cir. 2001) (quotation marks and citations omitted), *cert. denied*, 534 U.S. 1153 (2002). "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Price*, 265 F.3d 1097, 1107 (10th Cir. 2001), *cert. denied*, 535 U.S. 1099 (2002).

When one of the conviction counts "is set aside or vacated, the district court is free to reconsider the sentencing package de novo unless the appellate court specifically limited the district court's discretion on remand." *United States v. Smith*, 116 F.3d 857, 859 (10th Cir.) (citations omitted), *cert. denied*, 522 U.S. 903 (1997); *see also United States v. Alvarez-Pineda*, 258 F.3d 1230, 1241 (10th Cir. 2001) ("the sentencing court 'is free to reconsider the sentencing package de novo,' except as it is bound by the law of the case") (quoting *Smith*, 116 F.3d at 859). "The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case" and only comes into play "with respect to issues previously determined." *Mason v. Texaco, Inc.*, 948 F.2d 1546, 1553 (10th Cir. 1991) (quotation marks and citations omitted), *cert. denied,* 504 U.S. 910 (1992). Law of the case doctrine is not an inexorable command limiting the power of the

court, but rather it is solely a rule of practice to be applied with good sense. *Id.* The use of force enhancement was not raised in the first sentencing and the district court did not address it. That issue was not determined in the first trial.

Likewise, in Velarde's first appeal, we did not reach any sentencing issues because we reversed his conviction and remanded for a new trial based upon trial error. *Velarde*, 214 F.3d at 1210-12. The law of the case doctrine is inapplicable here. The enhancement for use of force was imposed after an entirely new trial, before a new judge and a new jury. It was not error to do so.

**AFFIRMED**.

<br>

**Entered by the Court:**

**TERRENCE L. O'BRIEN**
United States Circuit Judge