UNITED STATES of America, Appellee,

v.

Mark Christopher PRATT, Appellant.

No. 80-2083.

United States Court of Appeals, Eighth Circuit.

Submitted April 17, 1981.

Decided Aug. 26, 1981.

William J. Mauzy, Minneapolis, Minn., for appellant.

Thomas K. Berg, U. S. Atty., Ann D. Montgomery, Asst. U. S. Atty., District of Minnesota, Minneapolis, Minn., for appellee.

Ralph Ascher, Legal Intern.

Before HENLEY and ARNOLD, Circuit Judges, and FILIPPINE,* District Judge.

ARNOLD, Circuit Judge.

Mark Christopher Pratt pleaded guilty to two counts of distributing phencyclidine (PCP) and was sentenced to two consecutive terms of imprisonment for five years. The sentence included, in addition, two consecutive two-year special parole terms and a total fine of $30,000, with the provision that defendant would stand committed if he did not pay the fine. Pratt then moved under Fed.R.Crim.P. 35 to set the sentence aside, claiming that it had been imposed in violation of the Double Jeopardy Clause of the Fifth Amendment because the two counts on which defendant had been sentenced actually constituted only one criminal act. The District Court[1] denied the motion, holding that "the sentence imposed [was] ... just and proper." *United States v. Pratt*, No. Cr. 4–78–75 (D.Minn., amended

---

* The Hon. Edward L. Filippine, United States District Judge for the Eastern District of Missouri, sitting by designation.

1. The Hon. Miles W. Lord, United States District Judge (now Chief Judge) for the District of Minnesota.

order filed Oct. 30, 1980).[2] We hold that Pratt's plea of guilty, under the circumstances of this case, was a waiver of the double-jeopardy claim he now seeks to assert. We therefore affirm without reaching the merits.

## I.

Pratt was indicted on six counts of an 11-count indictment. Count VII alleged that on March 13, 1978, he distributed 26 grams of phencyclidine in violation of 21 U.S.C. § 841(a)(1), and Count VIII alleged that on the same day[3] Pratt distributed 1,308 tablets of phencyclidine, in violation of the same statute. Apparently Pratt and the United States Attorney's Office agreed that he would seek to plead guilty to these two counts. In return, the government would move to dismiss the other four counts (I, II, III, and X) in which Pratt was named. The defendant appeared with counsel in open court, and the matter was discussed at some length. Pratt stated that on March 13, 1978, he delivered to an agent of the Drug Enforcement Administration some phencyclidine that "came in one bag form, Hallmark-type bag, white bag. There was two separate, but the same substance—one in powder form and one in tablet form—in this one bag."[4]

The following exchange between court and counsel then occurred:

THE COURT: Well, what's the penalty for that, do you know?

THE DEFENDANT: Five years and a $15,000 fine on each count, Your Honor.

THE COURT: Well, we were just talking about Count VII now.

And then Count VIII?

THE DEFENDANT: The same, Your Honor.

THE COURT: Why did you deliver that?

THE DEFENDANT: It was the same day.

THE COURT: Two different transactions on the same day?

THE DEFENDANT: Same transaction, same day.

THE COURT: One is—what's the difference in that wording there, Ms. Montgomery?

MS. MONTGOMERY: The drugs were actually packaged differently.

One was 26 grams of powder. The other was made into tablets, and I believe that they—

THE COURT: You sold both tablets and powder then to that agent?

THE DEFENDANT: Yes sir, I did, but the same substance.

THE COURT: Each in a different package?

THE DEFENDANT: All in the same package.

THE COURT: But the sub-package was, there must have been a little bag within a bag, wasn't there?

THE DEFENDANT: There was, yes sir (nods head affirmatively).

THE COURT: Okay. Well, and the penalty on that one is how much?

THE DEFENDANT: Five years, $15,000 fine, sir.

THE COURT: So that's a total of 10 years you're exposing yourself to?

THE DEFENDANT: Yes sir, it is.

THE COURT: And a $30,000 fine?

THE DEFENDANT: Yes sir.

Tr. 4–5.

Later the following additional relevant colloquy occurred:

MS. MONTGOMERY: And you understand there is no agreement as to whether the two counts, the time will be served, you know, concurrently or consecutively—

THE DEFENDANT: Yes, Ma'am.

MS. MONTGOMERY:—you understand there's been no agreement, right?

---

**2.** The text of this order appears on p. 10 of the Designated Record (D.R.) filed in this Court.

**3.** Actually Count VIII of the indictment as filed, D.R. 3, charged that the crime occurred on March 13, 1977, but all parties agree that this date was a clerical misprision, and that in fact the date intended was March 13, 1978, the date of the crime alleged in Count VII.

**4.** Transcript of Guilty Plea, December 11, 1978, pp. 3–4 (hereinafter referred to as Tr.).

THE DEFENDANT: I understand. Tr. 8.

About two months after these proceedings, sentence was imposed as described above, including two consecutive five-year terms of imprisonment. The District Court, on motion of the government, then dismissed the other four charges against Pratt.

## II.

Defendant now urges that in fact he has been punished twice for what was really only one offense. He delivered to the agent only one package of PCP, and received in exchange one sum of money. The government responds that the PCP was in two different forms—tablets and powder—, that the tablets and powder, or "dust," were in two separate smaller packages, and that the price was arrived at through separate negotiations with respect to the two forms of the drug involved. The statute, 21 U.S.C. § 841(a)(1), simply makes it a crime "knowingly or intentionally ... to ... distribute ... a controlled substance ...." Whether, on a full examination of the facts, Pratt would be found to have committed one violation, or two, of this prohibition, is a question fairly arguable on both sides. It is also a question, however, of which Pratt, his lawyer (the same lawyer who represents him on this appeal), the government, and the District Court were all aware at the time of the guilty plea. Pratt knew that he was exposing himself to a total of ten years in prison and so stated explicitly on the record. He pleaded guilty, presumably, because he preferred the certainty of a maximum of ten years to the risk of conviction and punishment on each of six counts. All of the facts and theories now asserted by defendant in support of his Rule 35 motion were available to him when he pleaded guilty.

This is not, like *Herzog v. United States*, 644 F.2d 713 (8th Cir.), *cert. denied*, —— U.S. ——, 101 S.Ct. 3008, 69 L.Ed.2d 390 (1981), a case in which the double-jeopardy claim rests on an alleged multiplicity in pleading. Pratt's argument is not that he has been twice charged or tried for the same offense, but that he has been twice punished. So we do not view *Herzog* as controlling. The fact remains, however, that Pratt's guilty plea was entered with apparently full awareness of the fact that he was giving up the right to argue that Counts VII and VIII in fact involved only one offense. The case would be only marginally more clear if Pratt had said, in so many words, that he was giving up the right to assert a double-jeopardy claim if the court should later impose consecutive punishment. The colloquy reproduced above amounts in substance to just such a statement. In these perhaps special circumstances, we think it would be unfair to the United States and contrary to the principle, not without force even in the criminal field, that judgments should be final, to consider now the double-jeopardy claim urged by defendant.

It might be argued that *Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) (per curiam), requires us to reach the merits of Pratt's double-jeopardy argument. There, Menna had been convicted and imprisoned for contempt of court in failing to testify before a grand jury. He was later indicted for the same failure to testify. After unsuccessfully asserting a plea of former jeopardy, Menna pleaded guilty to the indictment and was sentenced again. On direct appeal, the Court of Appeals of New York declined to decide the double-jeopardy question, holding that it had been waived by the plea of guilty. The Supreme Court summarily reversed. A plea of guilty, it held, admits only those facts necessary validly to establish factual guilt. It does not "waive a claim that—judged on its face—the charge is one which the State may not constitutionally prosecute." 423 U.S. at 62–63 n.2, 96 S.Ct. at 242 n.2. The Court also observed that "[t]he State concedes that petitioner's double jeopardy claim is a strong one on the merits." *Id.* at 62 n.1, 96 S.Ct. at 242 n.1.

There are manifest differences between *Menna* and the present case. Menna pleaded guilty only after unsuccessfully raising the plea of *autrefois convict*. If the state

courts were correct in holding that the guilty plea waived any double-jeopardy claim, defendants and the state would thereafter be forced to go through the barren and pointless exercise of a trial where no question of fact going to guilt or innocence as such would be contested. Otherwise, no double-jeopardy claim could ever have been preserved for appellate review. Menna's claim was wholly unrelated to the facts, whereas the whole question raised by Pratt is intertwined with the issue of exactly what it was that he and the DEA agent agreed to buy and sell—two items, or only one. Menna's case was not complicated by the presence of additional charges which the state agreed to dismiss. And Menna did not explicitly and voluntarily expose himself to the very event (here, consecutive terms of imprisonment) that he later claimed was a violation of the Double Jeopardy Clause. Pratt, by contrast, never made a double-jeopardy argument until months after his sentence. He was aware of all the facts later asserted in support of that argument. He had no right to be surprised at the sentence that was imposed. He received the benefit of his bargain, dismissal of the other four counts.

Waiver of constitutional rights is not lightly to be presumed, and the Double Jeopardy Clause must be maintained in full vigor. The rights and immunities it embodies are fundamental. For the reasons we have given, however, we believe that it would be unjust in the circumstances of this case for defendant to be heard to say that his sentence was illegally imposed. Accordingly, the judgment is

Affirmed.