**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 3 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

TIMOTHY ALLEN GROVES,

      Defendant - Appellant.

No. 02-3387

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 94-CR-20071-01-GTV)**

---

**Submitted on the briefs:**[*]

Michael L. Harris, Assistant Federal Public Defender, Kansas City, Kansas, for Defendant-Appellant.

Eric F. Melgren, United States Attorney, and Robert S. Streepy, Assistant United States Attorney, Kansas City, Kansas, for Plaintiff-Appellee.

---

Before **TACHA**, Chief Circuit Judge, **EBEL** and **BRISCOE**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

    [*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case therefore is ordered submitted without oral argument.

Defendant Timothy Allen Groves pled guilty to one count of trafficking in child pornography in violation of 18 U.S.C. § 2252(a)(2). Although the offense took place in 1994, in calculating Groves' sentence the district court relied on two aspects of the commentary accompanying a 1996 amendment to § 2G2.2(b)(4) of the U.S. Sentencing Guidelines. First, the court observed that under the 1996 amendment, USSG § 2G2.2(b)(4)'s five-level enhancement for engaging in a "pattern of activity involving the sexual abuse or exploitation of a minor" applied whether or not the abuse or exploitation occurred during the course of the offense. Second, the court noted that under the 1996 amendment, prior convictions taken into account for purposes of setting the offense level as part of a pattern of abuse or exploitation under USSG § 2G2.2(b)(4) may also be used in determining the defendant's criminal history.

Groves now argues that the court's reliance on the 1996 amendment violated the Ex Post Facto Clause. We hold that the district court's use of the 1996 guideline amendment to determine the scope of the pattern of abuse enhancement was consistent with the Ex Post Facto Clause because that aspect of the amendment merely clarified preexisting law. However, we conclude that the 1996 amendment substantively changed preexisting law with respect to double counting for purposes both of establishing the offense level and the criminal

history, and that it was improper to apply this aspect of the 1996 amendment to Groves' 1994 offense.  We REVERSE and REMAND for resentencing.

# I.  BACKGROUND

In September 1994, Groves was indicted on two counts of trafficking in material involving the exploitation of minors in violation of 18 U.S.C. § 2252(a).[1] The first count charged him with shipping child pornography in foreign commerce on November 27, 1993, in violation of § 2252(a)(1); the second count charged him with receiving child pornography that had been transported in interstate or foreign commerce on February 17, 1994, in violation of § 2252(a)(2).  Groves had fled from the police sometime in 1994, and he was ultimately arrested almost eight years later, on April 4, 2002.  He then pled guilty to the second count of the

---

[1] 18 U.S.C. §2252(a) provides for criminal punishment for anyone who:
(1) knowingly transports or ships in interstate or foreign commerce by any means including by computer or mails, any visual depiction, if--
    (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
    (B) such visual depiction is of such conduct; [or]
(2) knowingly receives, or distributes, any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for distribution in interstate or foreign commerce or through the mails, if--
    (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
    (B) such visual depiction is of such conduct.

indictment, and the United States dismissed the first count. Under Groves' plea agreement, he stated that he "waives any right to appeal any sentence imposed by the Court within the applicable sentencing guideline range as determined by the Court; the defendant does reserve the right to appeal either an upward departure or an illegal sentence."

During sentencing, the district court applied the 1993 edition of the Guidelines Manual and calculated Groves' total offense level at 21. The base level for the offense was 15, and certain adjustments were made pursuant to the Sentencing Guidelines. Only one of those adjustments is relevant to the issues raised on appeal: The court increased Groves' offense level by five levels under USSG § 2G2.2(b)(4) because he "engaged in a pattern of activity involving the sexual abuse or exploitation of a minor."

To support this five-level enhancement, the Pre-Sentence Investigation Report ("PSR") listed several separate instances in which Groves had sexually abused or exploited a minor. Specifically, Groves had been convicted in 1978 for molesting minors in two separate incidents,[2] police in 1978 found videos of other juvenile males performing sexual acts on Groves, and Groves entered into a

---

[2] In June 1978, Groves was convicted in Greene County, Missouri, of molesting a minor. In November 1978, he was convicted in Jefferson County, Missouri, of two additional counts of child molestation arising out of a separate incident involving different victims.

sexual relationship with a 16- or 17-year-old male in 1994. None of these instances took place in the course of the underlying offense, i.e., Groves' knowing receipt of child pornography in February 1994.

The district court held that a pattern of activity involving the abuse or exploitation of a minor under USSG § 2G2.2(b)(4) can include instances such as those listed above that occurred outside the course of the underlying offense. In particular, the court relied upon the 1996 amendment to the guidelines commentary, which expressly states that § 2G2.2(b)(4) applies whether or not the pattern of abuse or exploitation occurred during the course of the offense.

Next, the district court determined that Groves had nine criminal history points, giving him a criminal history category of IV. Those criminal history points arose out of a 1977 theft conviction (three points) and his 1978 convictions for child molestation (six points). Thus, the district court found Groves' 1978 child molestation convictions relevant in determining both his offense level and his criminal history category. The defendant's offense level of 21 and criminal history category of IV set his presumptive sentence in a range of 57 to 71 months. The district court sentenced Groves to 65 months imprisonment.

## II. WAIVER

We must first determine whether Groves waived the right to bring this appeal. As part of his plea agreement, Groves generally waived the right to

appeal his sentence, but significantly he reserved the right to appeal "an upward departure or an illegal sentence." He now appeals on the ground that his sentence violates the Ex Post Facto Clause of the United States Constitution. Because the defendant reserved the right to appeal an "illegal sentence," and because an unconstitutional sentence is "illegal," we hold that the defendant is entitled to challenge his sentence on ex post facto grounds.

We strictly construe waivers of appellate rights, reading any ambiguities in the waiver agreement against the government and in favor of the defendant's right to appeal. United States v. Hahn, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc). The sentencing court is not authorized to impose an unconstitutional sentence – such as a sentence that violates the Ex Post Facto Clause – and such a sentence is therefore illegal. United States v. Lightsey, 886 F.2d 304, 305 (11th Cir. 1989). This appeal is plainly outside the scope of Groves' waiver agreement.

### III. EX POST FACTO CLAUSE

The ex post facto provisions of the U.S. Constitution prohibit criminal laws that are both retrospective in nature and disadvantageous to the defendant. U.S. Const. art. I, § 9, cl.3; id. at art. I, § 10, cl. 1; Miller v. Florida, 482 U.S. 423, 430 (1987). In particular, use of a sentencing guideline that was not in effect at the

time the offense was committed violates the Ex Post Facto Clause when the later guideline disadvantages the defendant. Miller, 482 U.S. at 428-30.

Nevertheless, we have repeatedly held that it is proper to consider amendments to the guidelines enacted after the date of the offense so long as they are only "clarifying," as opposed to "substantive." United States v. Mondaine, 956 F.2d 939, 942 (10th Cir. 1992) ("Although courts frequently consider clarifying amendments to discern the Sentencing Commission's intent as to application of the pre-amendment guideline, relying on a substantive amendment that occurs after the date of the offense at issue ... raises critical ex post facto problems.") (emphasis in original); see U.S. Sentencing Guidelines Manual § 1B1.11(b)(2) (1993) ("[I]f a court applies an earlier edition of the Guidelines Manual, the court shall consider subsequent amendments, to the extent that such amendments are clarifying rather than substantive changes."). As we explained in United States v. Gigley, we may "apply clarifying amendments retroactively to help us understand an older version of the guidelines." 213 F.3d 503, 506 n.3 (10th Cir. 2000).

Although distinguishing between substantive and clarifying amendments is often difficult, we have previously identified three factors that guide this analysis. United States v. Alvarez-Pineda, 258 F.3d 1230, 1236 (10th Cir. 2001). We must consider (1) whether the amendment alters the controlling pre-amendment

interpretation of the guideline, (2) how the Sentencing Commission characterized the amendment, and (3) whether the amendment changes the text of the sentencing guideline or merely the accompanying commentary.    Id.

The first factor – whether the amendment alters a prior controlling interpretation – is a threshold test that contains two distinct inquiries.  We must decide both (1) whether the pre-amendment guideline and its commentary is fairly capable of being construed consistent with the amendment, and (2) whether the amendment contradicts prior controlling case law interpreting the pre-amendment guideline and its commentary.  If a guideline amendment contradicts either the plain meaning of the preexisting guideline or controlling case law, that amendment is necessarily substantive.  See Mondaine, 956 F.2d at 942 (noting that a change is substantive unless it does no more than "clarify a meaning that was fairly to be drawn from the original version");    United States v. Frederick, 897 F.2d 490, 494 (10th Cir. 1990) (same).  If the amendment instead is consistent with the previous version of the guideline and controlling case law, then we consider all of these factors together.  United States v. Neilssen, 136 F.3d 965, 969 (4th Cir. 1998) ("[I]f the pre-amendment text of a guideline and its commentary are ambiguous on the subject of the amendment, and no circuit precedent exists resolving the ambiguity, then an amendment to the commentary of the guideline is most likely clarifying.")    .

Groves contends that the district court's use of two separate parts of the 1996 amendment violated the Ex Post Facto Clause. First, he argues that the 1996 amendment substantively changed the definition of "a pattern of activity involving the sexual abuse or exploitation of a minor" because it states that the five-level enhancement under § 2G2.2(b)(4) applies regardless of whether the abuse or exploitation occurred during the course of the offense. Second, he argues that the 1996 amendment was a substantive change because it provides that prior convictions considered as part of a pattern of abuse or exploitation and used to enhance the offense level under § 2G2.2(b)(4) may also be used in calculating the defendant's criminal history points. We address these arguments in turn.

### A. Pattern of Activity Involving Sexual Abuse or Exploitation of a Minor

With respect to § 2G2.2(b)(4), the "pattern of abuse" enhancement, the 1996 amendment changed only the commentary to the guideline, not the guideline itself. Both before and after the amendment, the guideline read:

> If the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor, increase by 5 levels.

U.S. Sentencing Guidelines Manual § 2G2.2(b)(4) (1993); U.S. Sentencing Guidelines Manual §2G2.2(b)(4) (1997). However, the amended commentary to the guidelines modified the definition of the term "pattern of activity involving

the abuse or exploitation of a minor." The pre-amendment commentary defined

that term as:

> any combination of two or more separate instances of the sexual abuse or the sexual exploitation of a minor, whether involving the same or different victims.

U.S. Sentencing Guidelines Manual § 2G2.2 cmt. n.4 (1993). The amended

commentary elaborated somewhat on this definition, stating that the term means:

> any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense, (B) involved the same or different victims, or (C) resulted in a conviction for such conduct.

U.S. Sentencing Guidelines Manual § 2G2.2 cmt. n.1 (1997). The amended

guideline thus specifically explains that this sentence enhancement applies even if

the pattern of abuse occurred outside the course of the offense, whereas the pre-

amendment version was silent with respect to that issue. Applying the factors

outlined above, we conclude that the 1996 amendment merely clarifies the scope

of the pattern of abuse enhancement under USSG § 2G2.2(b)(4).

We first address the threshold question of whether the 1996 amendment

was consistent with the prior controlling interpretation of the law. We conclude

that the amendment's position that a pattern of abuse or exploitation under USSG

§ 2G2.2(b)(4) can include incidents outside the course of the underlying offense

was at minimum a fair interpretation of the text of the pre-amendment guideline

and that there was no controlling case law to the contrary.

The plain language of the pre-amendment guideline and its commentary did not suggest that an offense level enhancement for a "pattern of activity involving sexual abuse or exploitation of a minor" should be limited to events occurring during the course of the charged offense. Rather, the pre-amendment commentary stated that a pattern of abuse or exploitation includes "<u>any</u> combination of two or more separate instances of the sexual abuse or the sexual exploitation of a minor." U.S. Sentencing Guidelines Manual § 2G2.2 cmt. n.4 (1993) (emphasis added).

On the other hand, it is true that this sentence enhancement was listed under the heading "Specific Offense Characteristics." Id. at § 2G2.2(b). Also, when the commentary generally addresses whether sexual abuse of a minor by the defendant should result in increased punishment, the commentary says that a departure may be warranted "whether or not such sexual abuse occurred during the course of the offense." However, when the commentary talks about an explicit five-level enhancement for a pattern of abuse, it lacks similar broadening language. Id. at § 2G2.2 cmt. n.4, 5.

Accordingly, "it is fair to say that the [pre-amendment] version of USSG § 2G2.2 and its accompanying commentary is ambiguous with respect to whether acts unrelated to the offense ... may be considered." Neilssen, 136 F.3d at 971 (ultimately holding that the amendment to the commentary of § 2G2.2(b)(4) addressing pattern of abuse is clarifying). For purposes of our analysis, it suffices

to observe that the 1996 amendment presents at least a fair interpretation of this guideline, thus suggesting that the amendment was merely clarifying.

Furthermore, we note that there was no prior controlling case law in this circuit or from the Supreme Court that was inconsistent with this aspect of the 1996 amendment. It is true that before the 1996 amendment came into effect two other circuits had held that the pattern of abuse enhancement under § 2G2.2(b)(4) applied only to incidents that occurred during the course of the offense. United States v. Surratt, 87 F.3d 814, 818-19 (6th Cir. 1996); United States v. Chapman, 60 F.3d 894, 901 (1st Cir. 1995). However, under this factor we look only to controlling precedent in our Circuit, not to the case law of other Courts of Appeals. See United States v. Farrow, 277 F.3d 1260, 1265 (10th Cir. 2002) (deeming an amendment clarifying because it did not "compel this court to overrule existing circuit precedent") (emphasis added); Gigley, 213 F.3d at 506 n.3 (considering an amendment clarifying in part because it "did not overrule existing precedent in this circuit") (emphasis added); cf. United States v. Kissick, 69 F.3d 1048, 1051-53 (10th Cir. 1995) (holding that an amendment was substantive because "our Circuit had reached a conclusion contrary to the Sentencing Commission's interpretation") (emphasis added) (abrogated on other grounds by Glover v. United States, 531 U.S. 198 (2001)). Because out-of-circuit case law does not create an interpretation of the guideline that is controlling here,

Surratt and Chapman do not render the 1996 amendment a substantive change to the law of this Circuit.

Indeed, if out-of-circuit cases rendered contrary guideline amendments substantive, the Sentencing Commission's ability to issue clarifying amendments would be severely curtailed. As the facts of this case demonstrate, the Commission is often prompted to clarify a sentencing guideline only after some court interprets the guideline differently than how the Commission intended. Before the meaning of a guideline becomes controversial, no clarification is needed. Expanding the controlling case law factor to include case law from other circuits would frustrate the Commission's interest in clarifying ambiguous sentencing guidelines.

The other two factors in our analysis require only brief discussion. The Sentencing Commission specifically characterized the 1996 amendment as clarifying. The Commission explained that "the amendment clarifies that the 'pattern of activity' may include acts of sexual abuse or exploitation that were not committed during the course of the offense." U.S. Sentencing Guidelines Manual, app. C, amend. 537 (1997) (emphasis added). Finally, the text of the guideline itself remained unchanged with respect to the pattern of abuse enhancement, and only the commentary to § 2G2.2 was amended.

In conclusion, all three factors indicate that the Sentencing Commission's amended definition of "pattern of activity involving the sexual abuse or exploitation of a minor" is clarifying, not substantive.  See United States v. Neilssen , 136 F.3d 965, 970-71 (4th Cir. 1998) (holding  the amended definition of pattern of abuse or exploitation under the commentary to § 2G2.2(b)(4) to be clarifying); United States v. Anderton   , 136 F.3d 747, 750-51 (11th Cir. 1998) (same).   Therefore, the district court's use of the 1996 amendment in enhancing the defendant's offense level under § 2G2.2(b)(4) did not violate the Ex Post Facto Clause.

B.  Use of Past Convictions

Groves also challenges the district court's conclusion that his prior convictions for child molestation could be used both to enhance his offense level under § 2G2.2(b)(4) and to determine his criminal history category.  The pre-amendment commentary to § 2G2.2 did not mention whether convictions could be properly counted under both the pattern of abuse offense enhancement and in determining a defendant's criminal history.  See U.S. Sentencing Guidelines Manual §2G2.2 (1993).  The amended commentary to § 2G2.2, in contrast, expressly provides that "[p]rior convictions taken into account under subsection (b)(4) are also counted for purposes of determining criminal history points."  U.S.

- 14 -

Sentencing Guidelines Manual § 2G2.2 cmt. n.2 (1997).  The Commission stated

that this "amendment clarifies that prior convictions counted as part of the

'pattern of activity' also may be counted as part of the defendant's criminal

history."  Id. at app. C, amend. 537 (1997).

Again, the Commission expressly declared the change to be clarifying, and

the amendment altered only the commentary accompanying § 2G2.2, not the text

of the guideline itself.  Accordingly, whether this aspect of the 1996 amendment

was clarifying or substantive depends wholly on whether it was contrary to prior

controlling law.  As noted above, this analysis requires consideration of both the

plain meaning of the pre-amendment Sentencing Guidelines and any prior

controlling Tenth Circuit or Supreme Court case law.

We are mindful of the general rule that "the Sentencing Commission plainly

understands the concept of double counting, and expressly forbids it where it is

not intended."  See United States v. Duran, 127 F.3d 911, 918 (10th Cir. 1997).

Yet with respect to calculating a defendant's criminal history points, the

Sentencing Commission has expressly taken action to limit double counting.

To understand what properly could have been considered as criminal

history, we must navigate our way through a number of interconnected provisions

of the guidelines and commentary.  We begin with the various sections of the

guidelines that provide that criminal history points are to be assessed for the

defendant's "prior sentences." Next, we note that USSG § 4A1.2(a)(1) defines the term "prior sentence" to mean only a sentence previously imposed for "conduct not part of the instant offense." See U.S. Sentencing Guidelines Manual § 4A1.2(a)(1) (1993). As of 1993, the commentary to § 4A1.2 further has defined "conduct that is part of the instant offense" as "conduct that is relevant conduct to the instant offense under the provisions of § 1B1.3 (Relevant Conduct)." See id. at § 4A1.2 cmt. n.1; United States v. Williamson, 53 F.3d 1500, 1526 (10th Cir. 1995) (recounting the history of the 1993 amendment to the commentary to USSG § 4A1.2). Taken together, these provisions of the guidelines and commentary provide that, prior to the 1996 amendment to the commentary, a conviction for conduct that is characterized as relevant conduct under § 1B1.3 for the instant offense would not also be counted as criminal history.

We next turn to what counts as relevant conduct under § 1B1.3. Among the examples of relevant conduct in that section, as pertinent to this case, is "any ... information specified in the applicable guideline." See U.S. Sentencing Guidelines Manual § 1B1.3(a)(4) (1993). This provision steers us to the guideline that the district court must apply in computing the defendant's offense level — in our case the pre-amendment interpretation of § 2G2.2. Section 2G2.2 specified various information that the district court was to consider in calculating the offense level, including whether "the defendant engaged in a pattern of activity

- 16 -

involving the sexual abuse or exploitation of a minor." Id. at § 2G2.2(b)(4). The pre-amendment version of the guidelines did not contain any specific provision in either the text or the commentary that expressly permitted or prohibited double counting under these particular circumstances.

The guidelines are admittedly not a model of organizational clarity with respect to double counting. Yet this odyssey ultimately leads us to the conclusion that, prior to the 1996 amendment, a "pattern of activity involving the sexual abuse or exploitation of a minor" was "relevant conduct" with regard to the offense at issue, and that such conduct therefore could not also have been used as criminal history.

This interpretation of the guidelines and commentary is supported by the purpose of the 1993 commentary amendment excluding all relevant conduct from the definition of a "prior sentence." According to the Sentencing Commission, this change was designed "to avoid double counting and ensure consistency with other guideline provisions." Williamson, 53 F.3d at 1526 (quoting U.S. Sentencing Guidelines Manual App. C ¶ 493 (1993)).

This analysis is also reflected in our case law. As we held in United States v. Torres, "[i]f the district court did take the prior sentence into account in calculating the offense level, then it is clear that to prevent double counting the court cannot use that same sentence in its criminal history calculation." 182 F.3d

1156, 1160 (10th Cir. 1999). Moreover, even when the district court did not actually consider the defendant's prior sentences in calculating the offense level, we will review the district court's underlying finding that the criminal activity was not relevant conduct. Id. A correct determination of whether the prior sentence constituted relevant conduct is an essential predicate to the criminal history assessment. Id. In short, "a prior sentence counts as criminal history if it does not involve relevant conduct under § 1B1.3." Id. at 1159; see also United States v. Rice, 358 F.3d 1268, 1276-77 (10th Cir. 2004) (it is improper to double count uncharged criminal activity that was used as relevant conduct in calculating the offense level to justify a criminal history category departure).

Furthermore, by the time the 1996 commentary amendment came into effect, we had already explained that under the preexisting version of the guidelines, at a minimum, "[i]f the prior sentence was actually considered by the court in calculating the defendant's offense level, then the [1993] amendment to note 1 of § 4A1.2 clarifies that the prior sentence may not be used to enhance the defendant's criminal history score." Williamson, 53 F.3d at 1526 (discussing double counting in the context of plain error review).[3]

_____

[3] There is broad language in some of our past cases that seems in tension with Williamson, Torres and Rice. See, e.g., United States v. Alessandroni, 982 F.2d 419, 421 (10th Cir. 1992) ("[T]he structure of the Sentencing Guidelines suggests that the criminal history category is to be determined independently of (continued...)

Thus, prior to the 1996 amendment, it was clear that convictions that had already been considered as relevant conduct under USSG § 2G2.2(b)(4) could not have been used to calculate the defendant's criminal history. First, the text of USSG §§ 4A1.2 (Definitions and Instructions for Computing Criminal History) and 1B1.3 (Relevant Conduct) and their accompanying commentary compelled that result, and there is no fair interpretation of the Sentencing Guidelines and accompanying commentary to the contrary.[4] Additionally, a prior Tenth Circuit

---

[3](...continued)
the offense level...."). This language pre-dated the 1993 amendment to the commentary to USSG § 4A1.2 defining conduct that is part of the instant offense as all relevant conduct. It is no longer controlling in light of that amended commentary.

Additionally, United States v. Jones, 332 F.3d 1294 (10th Cir. 2003), is distinguishable. In that case, the defendant's offense level for involuntary manslaughter on an Indian Reservation was set at 14 because his conduct was reckless, and the court increased his offense level by another five levels as an upward departure for "extreme recklessness." Id. at 1297-98. We held that it was proper to count his multiple prior convictions for drunk driving in computing his criminal history score even though that prior conduct was considered as evidence of his recklessness (the court explained that this prior conduct put him on notice that such conduct was dangerous). Id. at 1303-04. In that case, the relevant conduct was the defendant's recklessness at the time of the underlying offense; his prior convictions were only evidence that his later conduct was reckless, id., and the court did not consider those prior criminal acts themselves as elements of the defendant's reckless conduct in the instant offense. In other words, the defendant's prior convictions in Jones were not relevant conduct to the instant offense under USSG § 1B1.3. Any broader reading of Jones would be inconsistent with our prior decision Torres, and would not accurately state the law of this Circuit.

[4] Commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or

(continued...)

- 19 -

case had already explained that, under this framework, convictions taken into account as relevant conduct to determine the defendant's offense level could not also be used in computing criminal history points.  See Williamson, 53 F.3d at 1526 (ultimately finding no plain error when the prior conviction was not actually considered as relevant conduct in determining the defendant's offense level).

Because the 1996 amendment to the commentary to § 2G2.2(b)(4) modified this controlling framework by expressly allowing this kind of double counting, we must consider this aspect of the amendment to be substantive, not merely clarifying.[5]  Therefore, the district court's application of the 1996 amendment's double counting rule to criminal conduct that occurred before that amendment went into effect, to the defendant's detriment, ran afoul of the limits imposed by the Ex Post Facto Clause.

---

[4](...continued)
is inconsistent with, or a plainly erroneous reading of, that guideline.  Stinson v. United States, 508 U.S. 36, 38 (1993).

[5]  Groves does not question the prospective validity of the 1996 amendment's double counting provision.  If a particular guideline specifically speaks to double counting, that instruction is controlling.  United States v. Coldren, 359 F.3d 1253, 1256 (10th Cir. 2004); see also United States v. Castro-Rocha, 323 F.3d 846, 851 (10th Cir. 2003) (it is a fundamental canon of statutory construction "that, when there is an apparent conflict between a specific provision and a more general one, the more specific one governs").  We hold only that this aspect of the 1996 amendment was a substantive change in the law for ex post facto purposes.

Under the 1993 version of the Sentencing Guidelines, once the court considered Groves' prior child molestation convictions as relevant conduct for the instant offense, it then should have excluded those convictions from its criminal history analysis. This approach would have given Groves a total offense level of 21 and a criminal history category of II. His guideline range would have been 41 to 51 months. See U.S. Sentencing Guidelines Manual § 5A (1993).

## IV. CONCLUSION

The district court was entitled to rely on clarifying commentary in the Sentencing Commission's 1996 amendment to §2G2.2 in determining that a pattern of abuse or exploitation can include acts committed outside the course of the underlying offense. However, it should not have relied on that amendment's double counting provision because that aspect of the amendment constituted a substantive change in the law. We REVERSE Groves' sentence and REMAND for resentencing consistent with this opinion.