# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

————————

No. 04-1722

————————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of Nebraska. |
| Rodney Harrison, | * | |
| | * | |
| Appellant. | * | |

————————

Submitted: October 18, 2004
Filed: January 5, 2005

————————

Before COLLOTON, LAY, and BENTON, Circuit Judges.

————————

BENTON, Circuit Judge.

Rodney L. Harrison appeals his sentence for two offenses: possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1), and criminal forfeiture, 21 U.S.C. § 853. The district court[1] sentenced Harrison to 168 months' imprisonment, based on the 2003 Sentencing Guidelines in effect at the time of sentencing on March 1, 2004. Harrison argues that he should have been sentenced under the 2002 Guidelines in effect when he committed the crimes on May 7, 2003. Jurisdiction being proper under 18 U.S.C. § 3742 and 28 U.S.C. § 1291, this court affirms.

---

[1]The Honorable Thomas M. Shanahan, United States District Judge for the District of Nebraska.

For the first time on appeal, Harrison raises the argument that retroactive application of the 2003 Guidelines violates the Ex Post Facto Clause. **U.S. Const. art. I, § 9, cl. 3**. He seeks plain error review. *See **United States v. Comstock***, 154 F.3d 845, 847 (8th Cir. 1998); **Fed. R. Crim. P. 52(b)**. The government contends that Harrison waived the ex post facto argument in the district court and cannot raise it in this court.

"Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" ***United States v. Olano***, 507 U.S. 725, 733 (1993), *quoting **Johnson v. Zerbst***, 304 U.S. 458, 464 (1938). Waiver extinguishes a potential "error" under Rule 52(b). *Id.* The result is: "The plain error standard only applies when a defendant inadvertently fails to raise an objection in the district court." ***United States v. Thompson***, 289 F.3d 524, 526 (8th Cir. 2002).

The record here shows a waiver, not a forfeiture. Harrison's presentence report states, "The 2003 edition of the Guidelines Manual, incorporating amendments effective November, 5, 2003, has been used in assessing this case." At the sentencing hearing, the judge asks defense counsel, "And Mr. Hall, I don't find any express objection to the PSR. I take it that there is no objection; is that correct?" Defense counsel answers, "That's correct, Your Honor."

In his Brief in Support of Motion for Downward Departure, defense counsel says, "Mr. Harrison submits that the proper sentencing range for this offense should be 168 months (Class V)." The Brief relies on *United States v. Senior*, 935 F.2d 149 (8th Cir. 1991).

On the first day of sentencing, February 24, the judge cites and discusses *United States v. Senior*, 935 F.2d 149, and *United States v. Greger*, 339 F.3d 666 (8th Cir. 2003). The judge outlines that these cases allow downward departures to both

offense level and criminal history in order to compensate for overrepresentation of criminal history due to career offender status.

Later on the first day of sentencing, defense counsel requests a departure from category VI to V in criminal history. Defense counsel emphasizes that the government does not oppose the departure based on the totality of circumstances, and that it is justified based on *Senior* and *Greger*.

Concluding the first day of the sentencing hearing, the judge notes that he has discretion to depart downward. He questions why he is bound to a one-category criminal history departure instead of departure to the pre-career-offender range. The judge says that this would authorize a sentence of 92 to 115 months. He asks counsel for insight. The hearing was continued to March 1.

On February 26, Harrison filed Defendant's Amended Motion for Downward Departure and Request for Oral Argument. Three times, the Motion requests departure "downward one category level from category VI to category V."

Reconvening the sentencing hearing, the judge announces that he determined that a downward departure was warranted, but restates the open issue of how far he can depart. The government states that the departure is limited to one level, and that *Greger* is trumped by the new sentencing guideline. Defense counsel responds: "Your Honor, I believe that the government is correct that in fact it was probably a response that was—came about in November of 2003." Defense counsel continues: "And that was my reading of—." The judge then explicitly raises the ex post facto argument in open court:

> [A]nybody ever given any consideration to ex post facto considerations? I mean, before we came in with 4A1.3 we could do all this maneuvering, according to Judge Smith Camp, and I'm going to say in Gregor. And I might have the case mistaken, but it was that one that says there can be

both lateral, that is vertical, and—and horizontal movement. That's what existed before we came up on—in October of last year with the new 4A1.3. Oh, well.

After the government objects that ex post facto analysis does not apply to the sentencing guidelines, the judge says, "Well, it hasn't been—it hasn't been raised. But I toss it out for those that are intellectually hungry." After citing *United States v. Frank*, 354 F.3d 910, the judge states, "Government may want to take a look at that. I—or at least the defense may want to take a look at it sometime." The judge immediately adds: "Because they do apply the concept of ex post facto to sentencing guidelines, not just statutes." The Assistant U.S. Attorney concedes: "Well, then I stand corrected on the application of the clause. But we're not dealing with guideline ranges, I guess is my point. We're dealing with discretionary motions." Defense counsel does not respond during this discussion, but later during allocution argues that sentencing at the low end of the guidelines is appropriate. The judge then sentences Harrison to 168 months, "being the low end of the sentencing guideline."

This case is controlled by two decisions of this court. In *Thompson*, counsel withdrew all objections and asked for sentencing at the low end of the guideline range. *Thompson*, 289 F.3d at 526. Finding a waiver, this Circuit held, "On appeal, Thompson cannot complain that the district court gave him exactly what his lawyer asked." *Id. See also United States v. Nguyen*, 46 F.3d 781, 783 (8th Cir. 1995) ("A defendant who explicitly and voluntarily exposes himself to a specific sentence may not challenge that punishment on appeal."); *United States v. Fritsch*, 891 F.2d 667, 668 (8th Cir. 1989) (same); *United States v. Pratt*, 657 F.2d 218, 219-21 (8th Cir. 1981) (double jeopardy argument waived where defendant pleaded guilty with knowledge of the argument and the sentence to which he was exposed). *See generally United States v. Richardson*, 238 F.3d 837, 841 (7th Cir.), *cert. denied*, 532 U.S. 1057 (2001) (when a judge asks at sentencing whether there is an objection to an enhancement, and the lawyer does not object, the argument is barred from consideration on appeal).

In the other controlling decision by this court, the defendant's attorney, at sentencing, told the judge that the Presentence Investigation Report recommended the correct offense level and criminal history category, and stated "no objection" to the sentence. *United States v. Wilson*, 184 F.3d 798, 801 (8th Cir. 1999). On appeal, this court rejected plain error review of Wilson's argument that the district court violated the Ex Post Facto Clause in applying a later version of the Guidelines. *Id.* at 800. This court held that Wilson waived the ex post facto argument. *Id.* at 801.[2]

Here, the judge repeatedly identified the issues, and defense counsel took no action other than to request the sentence given. On this record, defense counsel did not inadvertently fail to object. *See Thompson*, 289 F.3d at 526. For purposes of this appeal, Harrison waived the ex post facto argument. This waiver extinguishes any potential error under Rule 52(b) as to Harrison's sentence. *See Olano*, 507 U.S. at 733.

The sentence is affirmed.

---

[2]The dissent argues that our decision in *Wilson* conflicts with *United States v. Michelsen*, 141 F.3d 867 (8th Cir. 1998). *Michelsen*, however, involved a defendant's waiver of the *right to appeal* an issue that was contested in the district court, while *Wilson*, *Thompson*, *Nguyen*, *Fritsch*, and *Pratt* concern claims that were themselves waived in the district court. Moreover, to the extent our cases on waiver of the right to appeal are relevant here, our more recent *en banc* decision in *United States v. Andis*, 333 F.3d 886, 892 (8th Cir. 2003) (en banc), holds that a sentence within the statutory range of punishment (as Harrison's surely was) is not an "illegal sentence" for purposes of enforcing an appeal waiver.

COLLOTON, Circuit Judge, concurring.

I concur in Judge Benton's opinion for the court, which I believe comports with our court's governing precedent concerning waiver. Even were Harrison's claim subject to review for plain error, however, I do not believe the district court's imposition of sentence "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings," as required before a court of appeals should exercise its discretion to correct a plain error. *United States v. Olano*, 507 U.S. 725, 736 (1993) (internal quotation and citation omitted). *See also United States v. Young*, 470 U.S. 1, 15 (1985) (holding that discretion to correct plain error should be employed "solely in those circumstances in which a miscarriage of justice would otherwise result.") (internal quotation and citation omitted).

On review of the governing law and the record in this case, I respectfully disagree with the dissent's assertion that Harrison "will serve roughly five to ten additional years than he would have served under the prior sentencing scheme." *Post* at 16. Harrison had no entitlement to a downward departure of any degree, and despite some preliminary discussion concerning the degree to which the court was authorized to depart from the guideline range under appropriate circumstances, the record ultimately does not establish that the district court thought the sentence imposed was inappropriate. The district court recognized that the Ex Post Facto Clause applied to changes in the sentencing guidelines, (S. Tr. 22-23), and the court of course had authority to consider a downward departure greater than either party sought. *See Burns v. United States*, 501 U.S. 129 (1991).[3] The court explained to Harrison that it had departed downward from the applicable sentencing guideline

_____

[3]Although the sentencing transcript shows that the government agreed to Harrison's request for a departure of one criminal history category, we do not know from this record whether the parties specifically had negotiated a one-category departure, such that an effort by Harrison to gain a greater departure might have jeopardized the government's agreement to any departure at all.

-6-

range, but that it "also had to consider the need to punish you and deter you from any other criminal conduct." (S. Tr. 29). The court concluded: "So it's my belief that this 168 months, being the low end of the sentencing guideline, is appropriate in your case." (*Id.*).

Whatever the district court believed, I conclude that the absence of a greater reduction in sentence did not seriously affect the fairness, integrity or public reputation of judicial proceedings. It is questionable whether Harrison deserved a downward departure at all, given his record of nine prior drug convictions based on at least six separate incidents between 1989 and 1991 when he was 29 to 31 years old, (PSR ¶¶ 34-39)[4], a violation of probation adjudicated in 1992, (PSR ¶¶ 34-37), a shoplifting conviction in 2001, (PSR ¶ 40), and his instant conviction at age 44 for possession with intent to distribute 1.49 kilograms of cocaine. (PSR ¶ 21). *Cf. United States v. Hutman*, 339 F.3d 773, 776 (8th Cir. 2003) (concluding after a survey of precedent that "a downward departure from career offender status may be appropriate for a relatively young defendant with a brief criminal career"). But accepting that the parties agreed to a downward departure, I think a departure of more than one criminal history category would have been "unreasonable" under the circumstances of this case. *See* 18 U.S.C. § 3742(e)(3). Accordingly, even were the matter before us on plain error review, I do not believe appellant has demonstrated that the district court's decision to limit the reduction to 20 months, thus resulting in a term of imprisonment of 168 months for this career offender, constituted a miscarriage of justice warranting relief under Federal Rule of Criminal Procedure 52(b).

---

[4]The presentence report reflects that four convictions were for sale of cocaine and five convictions were for possession of cocaine. Based on the sentences associated with each conviction, it appears that all of the offenses were punishable by a term of imprisonment exceeding one year.

LAY, Circuit Judge, dissenting.

I respectfully dissent. The majority has invoked a legal technicality in order to affirm an illegal and unjustifiedly severe sentence. The majority's reliance on waiver totally ignores the Supreme Court's opinion in *United States v. Olano*, 507 U.S. 725 (1993). In addition, the district court and this court lack the authority to impose an illegal sentence.

## I. Illegality of the Sentence

The majority holds that Harrison waived his right to object to his sentence, which was imposed under the retroactive application of a 2003 Guideline in violation of the Ex Post Facto Clause. The majority concludes Harrison is therefore barred from pursuing such an argument on appeal. However, the constitutional directive contained in the Ex Post Facto Clause cannot be waived. The Constitution orders Congress (and the states) that "[n]o Bill of Attainder or ex post facto Law shall be passed." U.S. Const. Art. I, § 9, cl. 3; *see also id.* at § 10, cl. 1. Accordingly, the U.S. Sentencing Commission, which crafted the Sentencing Guidelines pursuant to Congress' delegated authority, created U.S.S.G. § 1B1.11. This Guideline tells the federal courts to

> use the guidelines manual in effect on the date that the defendant is sentenced, unless the court determines that this would violate the ex post facto clause of the United States Constitution, in which case it is to use the manual in effect on the date that the offense of conviction was committed. Because an amendment to a Sentencing Guideline has the potential to increase a defendant's punishment for a crime committed prior to the amendment, the ex post facto clause is violated if a defendant is sentenced under the Guidelines in effect at the time of sentencing when those Guidelines produce a sentence harsher than one permitted under the Guidelines in effect at the time the crime is committed.

*United States v. Frank*, 354 F.3d 910, 926 (8th Cir. 2004) (internal citations and quotation marks omitted); *see also* U.S.S.G. § 1A1.1 (identifying the statutory authority for creation of the Guidelines); *Miller v. Florida*, 482 U.S. 423, 435-36 (1987) (wherein a unanimous Supreme Court held that a revised state sentencing guideline was void as applied to the defendant, whose offense occurred before the revised law's effective date).

The Ex Post Facto Clause enshrines a constitutional mandate that is binding upon Congress and, by extension, the Sentencing Commission and all courts attempting to implement the Guidelines. It is not a mere "procedural" right that can be shed carelessly. *See United States v. Groves*, 369 F.3d 1178, 1182 (10th Cir. 2004) (reversing and remanding a defendant's sentence under the Guidelines on ex post facto grounds because a "sentencing court is not authorized to impose an unconstitutional sentence – such as a sentence that violates the Ex Post Facto Clause – and such a sentence is therefore illegal"); *see also United States v. Lightsey*, 886 F.2d 304, 305 (11th Cir. 1989) (same).

While it is well-settled that an individual can waive his or her appellate rights in exchange for the benefits of a plea agreement, *see, e.g., United States v. Garrido*, 995 F.2d 808, 814 (8th Cir. 1993), a court never possesses the authority to impose an illegal sentence that violates the Ex Post Facto Clause, even where a defendant agrees to the illegal sentence in the plea agreement. *See United States v. Michelsen*, 141 F.3d 867, 872 & n.3 (8th Cir. 1998) (recognizing that, notwithstanding a voluntary and knowing waiver of appellate rights, a defendant implicitly preserves his or her

right to appeal a sentence on grounds of illegality).[5] If this were not true, then parties could agree to illegal contracts.[6]

---

[5]*United States v. Wilson*, 184 F.3d 798, 800-01 (8th Cir. 1999), appears to state the contrary. I am not confident that *Wilson* rests on sound reasoning. *Wilson* states correctly that even a constitutionally guaranteed "procedural" right to appeal may be waived by a criminal defendant. *Id.* at 800. Yet, the *Wilson* court refused to consider Wilson's *substantive* ex post facto argument on appeal, citing the general rule that a defendant who explicitly and voluntarily exposes himself or herself to a sentence may not challenge that punishment on appeal. *Id.* at 801. The majority makes an identical mistake. *See supra* majority opinion at 4-5 (*citing United States v. Thompson*, 289 F.3d 524, 527 (8th Cir. 2002); *Wilson*, 184 F.3d at 800-01; and *United States v. Nguyen*, 46 F.3d 781, 783 (8th Cir. 1995)). This general rule has no bearing on, and cannot trump, the special review procedure articulated in Fed. R. Crim. P. 52(b). Second, while the generic, procedural right to appeal can be waived, the substantive right prohibiting ex post facto laws cannot. As *Michelsen* states, the right to appeal a sentence on grounds of illegality survives a knowing and voluntary waiver of appellate rights. *See* 141 F.3d at 872. To the extent that *Wilson* and *Michelsen* create a conflict within our own circuit, this issue warrants further appeal or rehearing.

At any rate, *Wilson* is factually distinct from the instant case. In *Wilson*, the defendant's attorney stated at the sentencing hearing that he or she had reviewed the Presentence Investigation Report (PSIR) and "believed it [was] correct and accurate in all matters." 184 F.3d at 799-800. Here, Harrison's attorney made no such concession at the sentencing hearings. Indeed, ever since the PSIR in this case was released, Harrison and his attorney have argued that the PSIR's recommendation of "career offender" status seriously overrepresented Harrison's criminal history. Moreover, Harrison's plea agreement does not contain a provision stating that he waived his appellate rights.

[6]Because courts are required to approve plea agreements, the obligation to ensure that plea agreements do not violate the Ex Post Facto Clause probably rests with the court, and may be the type of constitutional issue that any court should be allowed to raise *sua sponte*.

If the sentencing court applied the wrong Guideline resulting in a harsher sentence than the correct Guideline would have imposed,[7] then Harrison's sentence violates the Ex Post Facto Clause and is illegal, and the sentencing court lacked the authority to impose the sentence.

Accordingly, I would vacate the sentence and remand for resentencing pursuant to the Guidelines that were in effect at the time Harrison committed the offense.

## II. Analysis Under Federal Rule of Criminal Procedure 52(b)

The majority opinion holds that Harrison waived the ex post facto argument. This is clearly wrong. The majority in so holding contradicts the principles of *Olano*.

Under Fed. R. Crim. P. 52(b), a court of appeals has the power to address errors to which a party did not object in district court. *See Olano*, 507 U.S. at 731. This power is limited; an appellate court may only correct the alleged error that occurred below if that error (a) is plain, (b) affects substantial rights, and (c) was inadvertently forfeited. *Id*. at 732.

### A. Forfeiture Versus Waiver

As the *Olano* court explained, "forfeiture is the failure to make the timely assertion of a right," whereas "waiver is the 'intentional relinquishment or abandonment of a known right.'" *Id.* at 733 (citations omitted). *Olano* states clearly that waiver must be the product of intent. *Id.* Yet, in response to the Government's

[7]*See infra* Part II.B. at 7-9 (conducting a harshness analysis).

comment that the Ex Post Facto Clause is inapplicable to the Guidelines, the district court itself stated on the record, "Well, it hasn't been – *it hasn't been raised*.  But I toss it out for those who are intellectually hungry."  Tr. at 21 (emphasis added).  This statement from the district court judge is definitive.  The majority reasons that because the "judge . . . explicitly raises the ex post facto argument in open court," *see supra* majority opinion at 3, then it can ignore the judge's subsequent statement that the Ex Post Facto issue "hasn't been – it hasn't been raised."  Tr. at 21.  This makes no sense.  The fact that the sentencing court and counsel for the Government pontificated about the issue at the sentencing hearing on March 1 – while defense counsel remained silent – does not change the legal status of this issue.

The majority's attempt to reconstruct the facts of this case so as to appear that defense counsel consciously waived an objection on ex post facto grounds is clearly erroneous.  Harrison did not waive his rights intentionally.  Although, on the first day of sentencing, the district judge was hinting at the potential ex post facto issue, defense counsel was clearly unaware of the implications of the judge's questions.  At most, this is inadvertent forfeiture, not waiver.

The majority's strongest evidence of waiver boils down to two statements, both of which require a gigantic interpretive leap to conclude that either demonstrates an intentional relinquishment of Harrison's ex post facto right.  First, during the first day of the sentencing hearing (February 24), *and before the judge ever mentioned the words "ex post facto or the 2002 Guidelines,"* the judge asked the attorneys how much discretion he had to depart downward.  Defense counsel requested a one-level downward departure in criminal history.  Without any mention of the differently worded 2002 Guidelines, defense counsel assumed that the judge's request was made pursuant to the (more limiting) 2003 version of the Guidelines.  This is not evidence of an intentional waiver – it is evidence of an inadvertent forfeiture.

-12-

Second, the majority points to February 26 when defense counsel filed an amended motion for downward departure reiterating the request made at the first hearing. Again, at this point, no one mentioned the 2002 Guidelines or the Ex Post Facto Clause. Defense counsel obviously repeated the request because he thought the judge needed clarification on the departure allowed under the 2003 version. Counsel did not comprehend what the judge was getting at, and that is inadvertent forfeiture, not intentional relinquishment.[8]

Conspicuously lacking from the majority opinion is any express statement in the record made by Harrison or his counsel – at a point in time after the district court mentioned the Ex Post Facto Clause explicitly – that he relinquished or waived his right under the Ex Post Facto Clause. It is not surprising that the record should be devoid of such a statement; a fair reading of the record reveals that defense counsel remained mute because he simply did not comprehend what was going on at the

---

[8]If not taken out of context, the record shows that defense counsel lodged conflicting and vague requests regarding the extent of departure and relied upon case law that specifically endorsed the sentencing judge's authority to depart downward more than one offense level. *See e.g.*, Def. Brief in Support of Motion for Downward Departure at 6 (requesting that the court "reduce his sentence as justice and fairness dictate" but requesting no specific offense level); Def. Am. Motion for Downward Departure and Request for Oral Argument at 2 (submitted on February 26, and requesting a departure of "one category level from category VI to category V"); Tr. at 13 (basing the departure request on the *United States v. Greger*, 339 F.3d 666, 668, 671 (8th Cir. 2003) – which explicitly allows a sentencing judge to depart both vertically and horizontally – yet also requesting only a single criminal history category departure because the ex post facto issue is not yet clear); Tr. at 24 (asking the court on March 1 to impose a sentence at the low end of the guideline range, but omitting a specification of the applicable range).

hearing.  Defense counsel's confused silence cannot be transformed into an express or intended statement that the Ex Post Facto Clause was inapplicable.[9]

Once the sentencing resumed on March 1, the judge finally mentioned the Ex Post Facto Clause by name.  The Government began to offer an argument to the court on that issue, but the judge *explained clearly that the issue was not before the court*.  As this exchange transpired between the judge and prosecutor, defense counsel remained silent.  After the ex post facto issue became explicit, defense counsel never again specified the precise extent of the departure being sought.

It is a stretch to rule that waiver of the Ex Post Facto Clauses' guarantee can occur where that issue was definitively "not raised" before the court, as the record states.  But it defies reason to engage in a double-charade and further hold, as the majority does, that such waiver can be achieved by defense counsel's failure to grasp an issue at which a judge is graciously hinting.

Ex post facto arguments simply were not asserted or waived by Harrison's counsel, and an inadvertent failure to assert a substantial constitutional right impacting the fairness and integrity of the penal system is precisely what Fed. R. Crim. Proc. 52(b) enables a defendant to resurrect on appeal. *Olano*, 507 U.S. at 731-32.

---

[9]Contrary to the Government's patently incorrect claim in its brief, the transcript from the sentencing hearing contains *no* concession by defense counsel that, in fact, the new 2003 guideline controlled the extent of departure in this case. Defense counsel merely conceded that the 2003 Guideline amendment "came about in November of 2003."  Tr. at 20.

## B. Plain Error Affecting Substantial Rights

In the present case, it cannot be disputed that the district court committed plain error that affected a substantial constitutional guarantee contained in the Ex Post Facto Clause – i.e., the unequivocal command that the Government shall not dole out punishment that imposes a harsher sentence than the one permitted by law at the time the crime was committed. *See* U.S. Const. Art. I, § 9, cl.3; *Frank*, 354 F.3d at 926.[10]

If one compares the sentence Harrison received under the 2003 version of the Guidelines with the sentence he likely would have received under the 2002 version, it appears that he would have received a lesser sentence under the earlier version. It is undisputed that the policy statement contained in U.S.S.G. § 4A1.3 (2003) limits the downward departures for career offenders to one criminal history category. Given Harrison's total offense level of 31 and a criminal history category of V (after application of a single downward departure), the resulting sentencing range was 168-210 months (14-17.5 years).

Even the Government concedes that "[p]rior to November 5, 2003, no such restriction existed allowing the Court to depart horizontally (criminal history category) and vertically (offense level) from the applicable career offender guideline range." Government's Brief at 8-9 (*citing Greger*, 339 F.3d at 668 (8th Cir. 2003)). Although the district court did not state definitively what sentence it would have issued to Harrison had it been able to exercise greater discretion, the record reveals that the district court wanted to drop Harrison's offense level to 23, but leave his

---

[10]Normally, a district court's decision to deny a downward departure is not reviewable. An exception to this rule is when "the district judge mistakenly believed that he or she lacked the authority to make such a departure," which is the case here. *Frank,* 354 F.3d at 926; *see also* Tr. at 23 (reflecting the judge's statement that he departed downward to the degree authorized under the current law).

criminal history category at VI, which would have produced a sentencing range of 92-115 months (roughly 7.6-9.5 years).[11]

In light of this analysis, it is clear that the application of the 2003 Guideline imposed a harsher sentence than the prior version. Harrison will serve roughly *five to ten additional years* than he would have served under the prior sentencing scheme. Moreover, this error encroaches upon a fundamental liberty interest protected by the Ex Post Facto Clause. "The presumption against the retroactive application of new laws is an essential thread in the mantle of protection that the law affords the individual citizen." *Lynce v. Mathis*, 519 U.S. 433, 439 (1997). In both a temporal and substantive sense, this error affects "substantial rights."[12]

---

[11]*See* Tr. at 8 (reflecting the judge's belief that if the district court opted to grant Harrison's request for downward departure on the ground that his "career offender" status overrepresented the severity of his criminal history, the court could sentence within the guideline range that would have applied absent the career offender status in its entirety – i.e., the base offense level minus any adjustments); *see also United States v. Senior*, 935 F.2d 149, 151 (8th Cir. 1991) (affirming sentence based on the guideline range that would have applied absent the career offender status).

[12]The Government argues that the 2003 amendment to U.S.S.G. §4A1.3 did not technically increase the penalty for the crime and therefore did not increase the harshness of Harrison's sentence. Rather, the Government reasons, the amendment merely restricted the sentencing court's discretionary authority to depart more than one criminal history level. This argument is disingenuous. When a judge's discretion to grant downward departures is restricted, the harshness of a sentence necessarily increases. The Supreme Court has already rejected the argument that downward departures or other types of penalty credits bear no relation to the severity of a sentence because they are "not 'in some technical sense part of the sentence.'" *Lynce*, 519 U.S. at 445-47.

> [R]etroactive alteration of parole or early release provisions, *like the retroactive application of provisions that govern initial sentencing*, implicates the Ex Post Facto Clause because such credits are one

Since the district court applied the 2003 version of the Guidelines and imposed a harsher sentence than it would have under the prior version, U.S.S.G. § 1B1.11 was violated. This type of deviation from a Guideline binding upon courts is "plain error" within the meaning of Rule 52(b). "If a legal rule was violated during the district court proceedings, and if the defendant did not waive the rule, then there has been an 'error' within the meaning of Rule 52(b) despite the absence of a timely objection." *Olano*, 507 U.S. at 733-34.

In short, the district court committed plain error affecting substantial rights, and Harrison did not waive appeal of this error. This case cries out for reversal.

_____

determinant of petitioner's prison term . . . and . . . [the petitioner's] effective sentence is altered once this determinant is changed. . . . [T]he removal of such provisions can constitute an increase in punishment, because a prisoner's eligibility for reduced imprisonment is a significant factor entering into both the defendant's decision to plea bargain and the judge's calculation of the sentence to be imposed.

*Id.* at 445-46 (emphasis added and internal citations omitted); *see also Weaver v. Graham*, 450 U.S. 24, 33-34 (1981), *overruled on other grounds*, *Cal. Dep't Corr. v. Morales*, 514 U.S. 499, 506 n.3 (1995) (holding that a revised Florida statute, which reduced the availability of monthly "gain-time" credits that could operate to reduce a sentence, was retroactively and unconstitutionally applied to defendant in violation of the Ex Post Facto Clause). Thus, it is well-settled that, even though a downward departure under § 4A1.3 is a product of judicial discretion to which a defendant is not necessarily entitled, this does not bar the ex post facto claim. In light of *Lynce* and *Weaver*, the Government's attempt to recycle this argument is ill-taken.